Daly, J.
The plaintiff brought his action for the dissolution of a co-partnership existing between himself and the defendants in The Express, a daily'newspaper, and for the taking of an account, claiming that he had an interest of one-sixth. The defendants insisted that his interest was only one-sixth of two-thirds, and upon the defendants’ application it was ordered that the point in dispute should be tried by a jury.
The trial was a long one, and fills a volume of more than 400 printed pages-. It was exhaustive in respect to the subject-matter. Great latitude, was allowed to the defendants upon the cross-examination of the plaintiff, Clarke: in the examination of their own principal witness, James Brooks, and by the admission of a large amount of testimony, much of it under the plaintiff’s exception, consisting of newspaper extracts, and the evidence of many witnesses relating to the speculation of the plaintiff in stocks, and as to his management of the money article in the Express, and there was an extensive examination, of the books of account and business transactions of the newspaper, extending over the whole time of Clarke’s active connection with it a period of more than seven years. Strict attention *387 Was paid by the jury to the testimony, during the whole investigation. The pertinent and suggestive questions put by them, especially during the examination of the books of account, and in respect to details in the business management of the paper, exhibited so much intelligence and practical business knowledge, that I was induced in my charge to make especial reference to the attention they had shown, the intelligence manifested by their inquiries, and to say that I doubted whether a better jury could have been found for the discharge the duty imposed upon them.
Forty-one exceptions were taken by the defendants during the progress of the trial, embracing exceptions to the admission or to the rejection of testimony,- or to the ruling of the court-upon questions of law, but one of which is considered, in the opinion of my colleague, as a ground for granting a new trial, and that was allowed upon the settlement of the case under peculiar circumstances. No memorandum of the exception was to be found in my own notes, nor in those of any of the counsel upon either side, nor in the notes of the stenographer. It was to the admission of a declaration made, by Clarke to his attorney, Hr. Bangs, which, from my familiarity with the rules of evidence, I would have supposed I could not have admitted under an exception, bnt for the fact that it was the impression of the two counsel for the defendants that I did, and I allowed it in deference to their better recollection. Regarding it, therefore, as testimony erroneously admitted under exception, the question arises whether the reception of it constitutes, in a case like this., a sufficient reason for ordering the cause to be tried over again.
This was an equity suit, in which the defendants were not entitled, as a matter of right, to a trial by jury, but in which the court, in the exercise of its discretion, directed certain facts to be ascertained by the verdict of a jury, and in such a ease new trials are not granted with the same facility, nor in all instances, for the reasons, which would be sufficient in an action at law.
When an issue of fact is joined in an action at law the verdict of the jury, if not disturbed, is-final, and the judgment of the court is given in accordance with it. For this reason it has been deemed more important that courts should upon such *388 trials enforce the principle that the rights of parties are to be determined strictly by legal evidence; and the most effectual means of enforcing it, is to order a new trial if improper evidence is admitted against the remonstrance and objection of the party complaining. Hence, it has been held in this State that a new trial will be granted in an action at law where erroneous evidence is admitted under exception, unless it is shown that the verdict was not affected by it: that it will not suffice that the party excepting was not probably injured, but it must be shown beyond a doubt that he could not have been prejudiced by it (Anthoine v. Coit, 2 Hall, 40; Gillet v. Mead, 7 Wend., 193; Clark v. Vorce, 19 Id., 232; Farmers’ Bank v. Whinfield, 24 Id., 419; Clark v. Crandall, 3 Barb., 613; Dresser v. Ainsworth, 9 Id., 619; Boyle v. Colman, 13 Id., 42; Williams v. Fitch, 18 N. Y., 546; Erben v. Lorrillard, 19 Id., 299).
This in most cases it is difficult to show, as it is generally impossible to say what effect the evidence may or may not have had upon the minds of the jury, and it is for this reason that it has been held that the proper comse in such a case is to grant a new-trial (Marquand v. Webb, 16 Johns., 89; Osgood v. Manhattan Co., 3 Cow., 612). But even upon this point the authorities in this State are by no means harmonious, for it has also been held that though such evidence was objected to, a new trial would be denied, unless there should be strong probable grounds for believing the merits had not been fully and fairly tried, and that injustice had been done (Crary v. Sprague, 12 Wend., 41; Northrop v. Wright, 24 Wend., 223; Depeyster v. Columbia Insurance Co., 2 Cai., 90); and Judge Weight in Forrest v. Forrest, 25 N. Y., 510, says that it is hardly the rule now in courts of lari that a new trial must be granted because evidence was-received, that ought to have been rejected, for that "latterly even these courts undertake to judge for themselves as to the materiality of evidence found to have been improperly admitted or rejected, and when satisfied that no injustice has been done, and that the verdict would have been the same with or without such evidence, they have refused a new trial.” The same want of agreement exists in the English courts'. In the Common Pleas a new trial will not be granted for the admission of improper testimony if there is enough evidence in the case to *389 warrant the verdict, and if in their judgment, the evidence improperly admitted ought to have had no effect (Doe v. Tyler, 6 Bing., 561; Horford v. Wilson, 1 Taunt., 14; Nathan v. Buckland, 2 Moore, 153). While the king’s bench has refused after mature consideration, to follow the rule of the' Common Pleas, and' declare that they will not undertake to determine such a question, as they cannot say what effect the evidence may have had upon the minds of the jnry, and that if they refused to grant a new trial where inadmissible evidence has been received under exception, that it might cause the rules of evidence upon trials, to be less carefully considered (Crease v. Barrett, 5 Tyrrwh.. 475; De Rutzun v. Farr, 4 Ad. & E., 53). The rule of the king’s bench has hitherto been the prevailing one in this State, while in most of the other States of the Union, the rule of the Common Pleas, after a full examination of the subject, has been adopted as the one which the result of experience has shown to be the best adapted for the attainment of justice (Hamblett v. Hamblett, 6 N. H., 333; Deerfield v. Northwood, 10 Id., 269; Prince v. Shepard, 9 Pick., 176; Thompson v. Lothrop, 21 Id., 536; Thorndike v. Boston, 1 Metc., 242; Page v. Homans, 2 Shep., 478; Commonwealth v. Shepherd, 6 Binney, 283; Steelman y. Steelman, 1 Harr. N. J., 66; Barringer v. Nesbit, 1 Smedes & M., 22; Carrol v. Mays, 8 Dana, 178).
But the strict rule which has been applied in courts of law has never been recognized in courts of equity. Where a trial by jury has been directed in a suit- in equity to ascertain certain facts, the trial is simply for the information of the court, with whom the ultimate decision of the case rests, and it is not therefore necessarily conclusive. The court, says Mr. Gbesley in his work upon equity evidence, may, if it think fit, make no use of the verdict, hut treat it as a nullity. It will often pay no heed to the most flagrant misdirection on the part of the judge, or mistakes as to the admission of evidence, if the court is satis Bed that the verdict is as it ought to have been, upon the evidence which is sound, and it may either send the case back to another jury or"decide it even in the teeth of a verdict ” (Gresley upon Evidence in Court of Equity, p. 527, 528). A1-. though a court of equity would have been satisfied if the verdict had been the reverse of what it is, it will not for that rea *390 son, send the ease back for another trial. There must he something which shows that the verdict is clearly wrong; something which satisfies the court that it cannot be right (Northam Bridge & Road Co. v London & Southampton Railw. Co., 11 Simons, 42). The test in every ease is the satisfaction of the conscience of the court, and this standard, as Mr. Greslev has remarked, being itself so vague, the rules in equity for gi anting a new trial are necessarily indefinite. The only general rule to be obtained from an examination of the cases is, that whether the error complained of was the admission of improper testimony, or the rejection of that' which was proper, or misdirection on the part of the judge, another trial will not be ordered, unless tlie court, taking the whole of the evidence together and connecting it with the judge’s charge, thinks that injustice has been done by the error committed, and it is dissatisfied with the verdict (Head v. Head, 1 Turn, & Russ., 141; Barker v. Ray, 2 Russ., 63; Winchilsea v. Waachope, 3 Id., 446, 454; Slaney . Wade, 7 Sim., 595; Northam Bridge Co. v. London & Southampton Railway Co., 11 Id., 42; O’Connor v. Cook, 8 Ves., 532; Warden of St. Paul’s v. Morris, 9 Id., 165, 169; Pemberton v. Pemberton, 11 Id., 52; Boole v. Blundell, 19 Id., 503; Bateman v. Willoe, 1 Sch. & lef., 201; Tatham v. Wright, 2 Rus. & Myl., 1; Apthorp v. Comstock, 2 Paige, 482; Mulock v. Mulock, 1 Edw. C., 18; Paterson v. Ackerson, Id., 96; Lansing v. Russell, 13 Barb., 520; Trenton Banking Co. v. Rossell, 1 Green Ch., 511; Lyles v. Lyles, 1 Hill's Ch., 76; Gilman v. Cameron, 1 Geo. Decis., 142; Clayton v. Yarrington, 33 Barb., 146; Forrest v. Forrest, 25 N. Y., 512).
Applying this rule to the present ease, there is no ground for a new trial, as all that was given in evidence, by proving what Clarke said to bis attorney, Mr. Bang*, was substantially established afterward in every . material particular by .the testimony of James Brooks himself; so that the evidence could have had no injurious effect upon the result, or operated in any way prejudicially to the defendants. This is even the rule in courts of law, in which a new trial will not be granted if facts are clearly proved by competent testimony and the jury have found in accordance with them ; though, in a certain stage of the case, improper evidence may have been *391 admitted, establishing, or tending to prove, the same facts (Mayor v. Wittberger, Geo. Dec., Part II., 20; Prince v. Shepard, 9 Pick., 176; Thompson v. Lothrop, 21 Id., 336; Emmons v. Lord, 6 Shep., 351; Hutchinson v. Moody, Id., 393; Bunting v. Allen, 3 Harr. N. J., 299; Steelman v. Steelman, 1 Id., 66; Barringer v. Nesbitt, 1 Smedes & M., 22).
The plaintiff, to show that his interest was that of one-sixth, relied upon a written paper, Exhibit 0, signed by James Brooks, in which it is- declared that he was the owner of two-thirds of the Express, and that he agreed, on the 1st of January, 1856, to sell to the plaintiff one-sixth of his interest in the paper, thereby reducing his own interest to one-half, for the sum of thirteen thousand three hundred and thirty-three dollars and thirty-three cents, two thousand five hundred dollars of which was to be paid on the delivery of this memorandum, and which two thousand five hundred dollars James Brooks admitted that he had received. This memorandum .of an agreement thereafter to be executed was dated the 30th of Nov., 1856, and it would have been conclusive upon the point in dispute, but for the fact of the existence of another paper, bearing the same date, a copy of which the plaintiff served with his complaint, which was signed by James Brooks, and which transfers to the plaintiff one-sixth part of James Brooks’s interest in the paper, which is declared by it to be two-thirds of the whole.
It lay with the plaintiff to account for the conflict between these two instruments, by one of which one-sixth of the whole was to be unused, and by the other one-sixth of two-thirds was transferred, both being of the same date. The plaintiff testified that after making up the account in January, 1860, he told James Brooks that he -wanted something more than the first memorandum, and suggested that there should be a formal bill of sale, and that he would give Brooks a chattel mortgage, securing him for the balance which was due him, and to which Brooks assented; that accordingly he went to his lawyer, Mr. Bangs, to get the mortgage and a legal bill of sale for James Brooks drawn, to be executed in place of what he regarded as an informal memorandum; that he gave Bangs the memorandum, Exhibit 0, and instructed him as to what he wanted; that Bangs drew a paper, as the plaintiff supposed, in *392 accordance with the memorandum and with the instructions that had been given ; that Bangs gave him the paper, and he gave it to Brooks, and told him it was the bill of sale that Bangs had drawn, and asked him to examine it; that Bangs returned it to him in a few days, and that he kept it in his desk for three years, not being able to get it executed; that at the end oBthat time, having paid up the residue of the purchase money, he desired to have formal articles of co-partnership executed, which was agreed to by the defendants, and that in December, 1862, he went to another lawyer, Mr. Law-ton, and employed him to draw the articles, at the same time giving him the paper which Bangs had prepared without examining it, and requested him to make a copy of it, that it might be executed; that he received the draft of the articles of co-partnership and the copy of the bill of sale, and on the 30th of January, 1863, the articles were signed by himself and James and Erastus Brooks, and the bill of sale was executed by James Brooks and witnessed by Erastus Brooks. This bill of sale (Exhibit A) is the one already referred to as transferring only one-sixth of two-thirds. It was shown to have been copied by Lawton’s clerks from another .paper, but the clerk could not say from whom he had received the original paper. The articles of co-partnership, which took effect from- their date, the 17th of January, 1863, declare that the plaintiff and James and Erastus Brooks are the owners of the Express— James Brooks of the one-half, Erastus of one-sixth and the plaintiff of one-sixth—and that as such owners and proprietors they had thereupon published the Express under the name of J. & E. Brooks, and that they had for the purpose of continuing the paper and carrying on the business establishment thereof, agreed to become co-partners under the name of J. & E. Brooks & Oo. The plaintiff also testified that the paper prepared by Bangs, the original of Exhibit A, was destroyed by him, together with an unexecuted mortgage prepared by Bangs, upon clearing out the papers from his desk, some time between the execution of the articles of copartnership and the commencement of the suit, that is, between the 30th of January and the 17th of July, 1863 ; that he destroyed them with other papers, supposing them to be of no father use, and that he never discovered that Exhibit A was different from Exhibit *393 C. until his attention was called to it after the commencement of the suit; that he supposed the mortgage was the same as Exhibit A, upon the supposition that if Bangs made a mistake in the one he continued it in the other.
The plaintiff then called Bangs. He remembered the plain-, tiff calling upon him, but could recollect only one interview. He was asked what transpired, • to which the defendant objected. The objection was overruled, and the defendant excepted. The witness then stated that the plaintiff brought him a paper and was about to state what occurred between the plaintiff and himself, when the defendant objected. The objection was overruled, and the defend ant excepted. Bangs then testified that the plaintiff exhibited to him -the paper, as containing the terms of arrangement for the purchase by him of an interest in the Express. That he could only state the substance of the instructions he had received. That they were substantially that the paper brought by the plaintiff had been in existence for some time, and that nothing had been executed to carry it out; that the plaintiff wanted a paper executed to carry out the one shown by him to the witness, and that his instructions were to draw such a paper. That Clark said something about the property of the Express consisting of subscription lists, type, &e., and that they agreed that the larger part of the property of a newspaper establishment was somewhat indefinite. This was the whole of the evidence of what the plaintiff said to Bangs, and for the admission of which the defendant asks to have a new trial. Bangs further said, upon the direct, that he drew a paper for the plaintiff, but he had no recollection of delivering it to" any one, although he had no doubt that he did. That he recollected that the. paper shown to him by the plaintiff was a blue one, and a short one, but he did not remember its contents. But this latter evidence, even if it had been excepted to, was admissible, the question being how the two conflicting papers, of the same date, came to be executed.
The witness was cross-examined by.the defendants, and the result of it was this: That he tried to be a careful man in drawing papers, but he had made mistakes. Would not say that he had not in this instance, for he did not know. It was always a rule with him to read a paper to a party after it was *394 drafted, to see it'it expressed what the party meant; but he had a doubt whether he had read the paper he prepared in this instance to the plaintiff, as he had no recollection of delivering it. He had not the slightest recollection of the details of it. Exhibit C he did not recognize, nor Exhibit A, hut he may have seen it. He then read both papers, and said that he liad drafted a paper like Exhibit A; that, as nearly as he could recollect, the paper he drew corresponded in substance with Exhibit A ; that- he prepared á paper which, according to his recollection of its contents, corresponded substantially with Exhibit A; that it was his impression that the paper which the plaintiff showed him was not left with him; that his recollection was that lie-became acquainted with its contents, and then drafted the paper which he drew.
The substance, then, of the witness’s testimony, was that the plaintiff had brought a paper to him, of the details of which he had not the slightest recollection, and that he drew a paper from it for the plaintiff, the contents of which, to the best of his recollection, corresponded with Exhibit A. So far, therefore, as his general testimony went, it was as favorable for the defendant as for the plaintiff.
James Brooks testified that about the time referred to by Bangs, a paper corresponding with’Exhibit A was brought to him, together with a chattel mortgage, by the plaintiff; that he told the plaintiff that there was no use in his giving a chattel mortgage, that they could get aiong amicably; that he (the plaintiff) was paying the purchase money, and would pay it in due time, and he would have his conveyance in legal time; that they were trusting each other, and that he (Brooks) did not see any necessity for drawing papers in a legal form, because they could get along as partners, so that the fact of the preparation and existence of these papers was established also by the testimony of"Brooks. He also proved that the paper under which they were doing business when this interview occurred with Bangs, had been in existence for some time, and that nothing had been executed to carry it out until January, 1862. He said it was signed by him in January, IS'56. That it was' a memorandum of the arrangement made in these words: “I null sell and convey to Clark one-sixth of my two-thirds interest, giving him the assets for his share.” That it *395 was the proposition: contained in Exhibit A, so that for all that appears from this portion of the testimony of Bangs, this may as "well have been the paper which, the. plaintiffs brought to Bangs, and to which he referred, as Exhibit G. Bangs did not swear that the paper brought to him was Exhibit C, for he had not the slightest recollection of its contents, nor. did this inadmissible testimony in any way tend to pfove it so, nor did it in any way conflict with or contradict the testimony of Brooks. It could, therefore, in no way have operated to the prejudice of the defendants. , What was said about the property of the Express consisting of subscription lists, types, &c., and of the indefinite character of such property, was entirely immaterial, and had no bearing upon any question involved in the case.
Two facts in the testimony of Bangs,, one of which was admissible even if it had been excepted to, and the other of which was brought out by the defendants upon the cross-examination of the witness, may have had an influence upon the .jury. He.testified that the paper brought to him was of a 'blue color, in this respect corresponding with Exhibit G," and that it was his impression that the paper was not left with him; that he became acquainted with its contents, and then drew the paper which was the original of Exhibit A. The jury may possibly from this circumstance, have inferred that Bangs, not having Exhibit C before him, and remembering that the interest of James Brooks was two-thirds, and that the sale was to be made by him, may, by mistake, have drawn the, hill of sale and the mortgage for one-sixth' of two-thirds only. These two facts, I say, may, in connection with other testimony in the case, have led the jury to that conclusion, but, every other part of Bangs’testimony was as favorable to the defendants as to the plaintiff, or if it had any tendency either way, it was toward producing the impression that the -paper brought.to hini stated the plaintiff’s interest to be as it was expressed in the orLinal of Exhibit A.
This will suffice to show that the reception of this testimony had no injurious effects upon the defendants. The same gene- • ral remade may be applied to the other exceptions. They are too numerous to go over in detail, and I will advert only to those which are contained in the appellant’s points. The qnes-. *396 tions put to Bangs, folios 515, 517, as to what he would have done in the cases suggested, were inadmissible, as calling /for the opinions and conjectures of the witness. The issues to be tried were framed by the questions. Any pertinent evidence was admissible under them, and upon the trial of them the court had nothing to do with amending the pleadings. Exhibit C was admissible as documentary evidence directly bearing upon a fact involved in the issues. The manner in which Clark’s interest was to be paid for was immaterial, the question being what his interest was. The exception at'folio 1,195, referred to in defendants’ point, was taken by the plaintiff. The witness afterward testified fully as to the conditions which were inquired about by the question put at folio 710, and the same remark applies, to the next question, folio' 711". The question at folio 1,079 was unnecessary and unintentional, as Exhibit I showed where the profits for the first six months came from, by deducting the expenses during that period from the'receipts, and they were specifically stated in the figures in the Exhibit. There was conflicting evidence upon the question whether the plaintiff used the character and credit of the newspaper in private trade and businéss. The plaintiff testified that he did not. write the money article referred to by General Dix, and he denied that he ever made the statement sworn to by Cruckcroft Lawrence Cohen, and it was therefore for the jury to judge of the question of relative credibility, and their finding upon the point is conclusive ; and upon the other branch of the question there was no evidence sufficiently certain to warrant a finding that the partnership was deprived of any of the skill, time, and attention, of the plaintiff by his speculating in stock. The appellant’s points state that all of the exceptions' to the charge of the court are well taken. They are not pointed out, and I find none, in my judgment, that were well taken. This embraces a review of all the exceptions relied upon or stated in' the defendants’ points, and I will now add that I heard the evidence in this case; that since the argument I have read the whole of it carefully over, and collated and compared different parts of it, and my conclusion is that the weight of the testimony is in favor of the verdict.
Cardozo, J.
I have read the voluminous' case in this matter very many times, but in the view I take of it, it will not be *397 necessary for me to allude, to any considerable extent, to the testimony.
It is a singular case in many respects.
The main point of dispute was whether the plaintiff was the owner of one-sixth of the whole, or but one-sixth of two-thirds of the newspaper called the Express. Attached to the plaintiff’s complaint were two papers, inconsistent with each other, by one of which the smaller interest was conveyed to the plaintiff, and by the other of which it was recited that he was entitled • to the larger. Upon the part of the plaintiff, it was claimed by a paper dated .the thirtieth day of November, 1855, it was agreed that there should be sold to him one-sixth of the whole concern ; and that the instrument of the same date conveying to him but one-sixth of two-thirds was designed to fulfill that agreement, and was accidentally erroneously drawn. The defendants insisted that the writing agreeing to sell to Mr. Clark one-sixth of the whole property, was but one of thre.e propositions, all drafted in the form of agreements to sell, signed by Mr. James Brooks, and left with Mr. Clark for consideration, and that that proposition was rejected by Mr. Clark, and one of the others, by which he was to have one-sixth of two-thirds, precisely as specified in the conveyance of November 30, 1855, was accepted by him. The inconsistency exhibited at the start of the cause—by the conflict between the two papers appended to the complaint—continued throughout it in almost every stage, including the trial of the issues, upon which the two highly reputable gentlemen, plaintiff and defendant, who are the principal actors in the suit, flatly contradicted each other in almost every material and leading point. Mr. Brooks’ evidence that he had such confidence in Mr. Clark that he signed almost anything that the latter presented to him withont reading it, and the theory of having no taste for accounts (winch is sustained by Mr. Clark’s oath, that when all the partners met' at Mr. Brooks’ house on Fifth Avenue, he went asleep over them) he did not comprehend or acquiesce in those which Mr. Clark says Mr. Brooks received during the partnership, are not more improbable nor more open to remark than the statement of Mr. Clark that he received from- Mr. Bangs a paper which conveyed to him but one-sixth of two-thirds of the property, when he designed and had instructed *398 the lawyer to make it a bill of sale of oue-sixtb of the whole; that be read it,, kept it-in. his possession for years, and yet never detected that it varied in that important point from the real agreement and intention, until after the commencement of this litigation. But I do not intend to go through the case to specify the contradictions, or to consider which of the theories of these gentlemen strikes my mind as the more probable or consistent with the circumstances and the evidence generally.
It will readily be perceived that the conflict was great and irreconcilable, and that, from the nature of the question, any evidence which would corrobórate the theory or testimony of the one side would be likely to be important and effective in deciding the issue against the other, and if any such has been improperly allowed, even conceiving that the doctrine of Forrest against Forrest, which is nothing but a reaffirmation of the old rule in chancery, is to be applicable to all equity trials, it seems impossible to say that when the question was one of credibility, the erroneous admission of testimony calculated to sustain one side has not “ produced injustice in the general result” to the other.
Applying that test—whether the erroneous testimony produced injustice in the general result to the defendants in the case' before us—I think a new trial should be allowed because of the ruling upon the objection to the evidence upon Mr. Bangs, as to statements made to him by Mr. Clark, the plaintiff, in the absence of the defendants." It was mere hearsay, and I see no principle upon which it should have been received. It is to be observed, also, that Mr. Clark, when on the.stand, testified about his going' to Mr. Bangs,-and about the bill of sale being drawn by the latter, but he was not examined as to what he said to Mr. Bangs, when the defendants could have cross-examined him upon its truthfulness ; yet Mr. Bangs was permitted, under exceptions, to tell the substance of what Mr. Clark said to him. I think this, tending as it- did to sustain and corroborate Mr. Clark’s version, or at least his recollection, in an essential particular, may easily, on a nice question of credibility, have turned the jury against the defendants, ■ and that for that reason, especially as the verdict necessarily seriously reflects upon the witness whose evidence must have been disregarded, we ought not critically to review the testimony, to *399 see whether the finding of the jury is not so consistent with many circumstances as to require us to pronounce it satisfactory, but seeing that the evidence erroneously received may have influenced the jury to believe Mr. Clark and to discredit Mr. Brooks, and recognizing that a question of credibility is essentially one proper to be submitted to “ men accustomed to examine facts in the light in which people generally view them, rather than in the close method of judges and lawyers,”—we ought to say that the error may “ have done injury” to the defendants, and may “ have produced injustice in the general result” (Forrest v. Forrest, 25 N. Y., 512), and that, therefore, the verdict should be set aside, and a new trial ordered.
II. November, 1866. Motion for stay of proceedings.
The defendant, pending his appeal from the order denying a new trial made as above stated, applied to the court for a stay of proceedings until such appeal could be heard and determined in the court of appeals.
-, for the motion.
Henry A. Cram, opposed.
By the Court.—Daly, J.
The undertaking required by section 334 of the Code would not stay proceedings, for the reason that the cases provided for in section 342 are cases in which a judgment is appealed from; and it has consequently been held that that section does not apply to an appeal from an order granting or refusing a new trial (McMahon v. Allen, 22 How., 193; Valton v. The National Loan Fund Life Assurance Society, 19 Id., 513; Tiers v. Carnahan, 3 Abb., 69).
The rule laid down in Tompkins v. Hyatt, 19 N. Y, 534; Hollister Bank of Buffalo v. Vail, 15 Id.; Swartwout v. Curtis, 4 Id., 415, that there must be_a final judgment before an appeal can be taken to the court of appeals, does not, in 'my opinion, apply where the appeal is from an order granting or refusing a new trial. The amendment of the eleventh section of the Code in 1857, and 1862, allow an appeal in such a case, with no other limitation or restriction than that which is im *400 posed in the case of an appeal from an order granting a new-trial. The three cases above cited were not appeals from an order either-granting or refusing a new trial; and as I understand the decision of the court of appeals, it was simply that that court will not review a judgment until it is actually entered, and is in all respects final in its character, which is something very different from hearing an appeal from an order granting or refusing a new trial.
It was held by the court of appeals (in Lansing v. Russell, 2 N. Y., 563), that the granting or refusing a new trial, i‘n an equity case, where certain issues were directed to be tried by a 'iury, was a matter resting entirely in the discretion of the court below, and that no-appeal would lie to the court of appeals in such a case. - The merits of the controversy had not been disposed of when the appeal in this case was brought; and Chief-Justice Beonsoh, in delivering the opinion of the court, said that whether the order refusing the new trial could-be considered, after there had been a decree upon the merits of the controversy, was a point that need not at that time be settled.
The court of appeals did, in an appeal after final judgment, review an order, refusing a new trial in an equity case (in Forrest v. Forrest, 25 N. Y., 501), in which case they-affirmed the judgment; but express authority is given to that court, upon an appeal from a judgment, to review any intermediate order involving the merits, and this was such an order. All the judges in that case concurred in the opinion that where a trial by jury had been ordered in an equity case, it was to be reviewed not as upon a strict bill of exceptions, but upon the principles on which a court of equity examined the trial of a feigned issue awarded for the information of its own conscience.
Justice Wright, by whom the opinion of the tiourt was delivered, declared that the application for a new trial was in the discretion • of the equity judge; that it was not material whether evidence was improperly admitted or rejected; and that a court of equity was not bound to award a new trial unless the errors were so substantial as to lead to the conclusion that the trial had been an unfair one, or that injustice had been done; which was the rule upon which this court acted in refusing a new trial in the present case. Justice Weight, however, remarked further, that the discretion wifh which an equity *401 court was clothed was not an arbitrary one, and that if the error committed plainlyled to injurious and unjust effects, of which the defendant has a right to complain, and there was reasonable doubt of the justice of the result, a re-trial of the issues should be ordered. This, I apprehend, applies where a court of equity gives judgment in accordance with the finding of the jury, regarding it as satisfactory, and treating it as conclusive upon the questions at issue; but, as was said by Chief-Justice Bbonson (in Lansing v. Russell, supra), and. as had been held in other cases, the court may decree in accordance with the verdict, or it may disregard the finding of the jury, and decree the other way; that, in short, as Chief-Justice Beoksoh said, “the jury and the verdict are things which the court may úse or let alone as it sees good;” and the use which the court has made of the verdict does not come under review until an appeal is taken from its judgment.
In the present question the jury passed upon the real question at issue upon the pleadings, and- the court has made a decree upon the merits, in accordance with their finding, so that it -is an open question whether the defendant must wait until they appeal from the judgment before they can have a review in the court of appeals of the order refusing a new trial, or whether they can review it under the appeal allowed by the amendment of 1862. If it is reviewable only as an order involving the merits, upon an appeal after final judgment is entered, then the judgment may be practically carried into effect and executed before such an appeal can be brought. It is possible, therefore, that the court of appeals may conclude that they can review the decision of the general term refusing to grant a new trial upon an appeal from the order, irrespective’of the judgment, and as that is at least possible, the question is, whether we should stay all proceedings until the order can be reviewed in the court of appeals..
If nothing further were involved than the'review of our order, and if the plaintiff could be secured against all the consequences of the delay, we should not hesitate to grant the application. If the suit involved nothing more than the recovery of a certain sum of money, a stay might be granted upon giving security for its ultimate payment. But the difficulty in' the present case is, that the appeal, if it should be entertained by the *402 court of appeals, cannot be heard in its regular order, short of two or three years, and there is no means, at least none that-occurs to Judge Beady- or myself, with whom I. have consulted as the application was. made in the - first instance to him, by which the plaintiff could be secured from, the consequences, if the property should in the meantime depreciate. It is. a species of property, the proprietorship in a. daily newspaper-, which may be affected by a great variety of causes, for the. pecuniary value of a newspaper depends upon its popularity and the amount of patronage it receives. The proportional part of the joint interest to which the plaintiff is entitled has been determined by the verdict -,of the jury and by the decree which the court has made in accordance with it; but the value of the joint interest is not known, and cannot be known until the property.has; been disposed of by a public sale, and what the plaintiff will be entitled to will be his proportional part of the proceeds after the property has been sold. If it should diminish in value, Ms share will be proportionately diminished, and in property of this nature such a, possibility- is. a matter wMch. cannot be overlooked.
It has been settled by a course of judicial decisions, that if, in an action for the dissolution of a co-partnership, the parties cannot agree as to the value of their pecuniary interest, the only mode of determining it is. by a sale of the whole of the partnership property at public auction, and this must take place sooner or later in this case, for the only point in dispute is the extent of the plaintiff’s interest. It was held by Justice Hoffman, in Dayton v. Wilkes (17 How., 510), that the; full pro tection.of the property, in a newspaper requires that the receiver should be empowered to carry-it on until sufficient time is allowed to dispose of it advantageously; and Chancellor Walworth held (in Martin v. Van Shaick, 4 Paige, 480), that a court of equity will not take upon itself the responsibility of continuing the publication of a political newspaper by a receiver any longer than is absolutely necessary to prevent'a sacrifice of the property; that if a receiver is appointed, he must proceed and sell the establishment without delay ; that, in the meantime the business must be carried on by him as usual, so that-the good will of it may be secured to the pur *403 chaser, and the full value of it realized by the partner, on the sale.
We have gone much further than this by continuing the publication of the paper through the instrumentality of a receiver, during the litigation of this court, a period now of nearly three years and -a half, and the reasons must be very grave ones which would warrant us in staying the sale now that the plaintiff has obtained a decree in his favor, the defendants having failed to establish any of the defenses which they had interposed. We refused a new trial, on the very ground upon which the court of appeals say (in Forrest v. Forrest, supra), a court of equity ought to refuse it, giving to the case a most careful consideration, and setting forth, in an elaborate opinion, the authorities and the reasons which in the j udgment of the majority of the court were conclusive upon the point. We do not presume upon the infallibility of our own judgment. It is our duty to afford every reasonable facility to enable the defendants to review our judgment in a higher tribunal, when we can do so without prejudice to the rights of the other party ; but no security which the defendants can offer, in the shape of the ordinary written undertaking, would guard against the result to the plaintiff of a diminution in the pecuniary value of the paper, during the long period which must elapse, before the appeal from the order refusing a new trial can be heard in the court of appeals. If we should stay the sale until the appeal is disposed of, the value of the plaintiff’s interest would depend upon the value of the paper then, and we have no right by an arbitrary exercise of power to subject him to the chances of such a contingency. It is admitted in the pleadings that the plaintiff was a partner, and that the partnership was dissolved in the mode prescribed by the articles ; and such being the fact, he is entitled, upon the authority of adjudged cases, to have the joint property sold at the earliest period that it can be done advantageously, whatever may be the subsequent adjudication of the court upon the distribution of the proceeds.
We can see no way in which the plaintiff can be protected against the possibility of a dinuinution in the value of the property, unless the defendant should agree that his valuation of his interest upon the trial should be deducted from the pro *404 ceeds, in the event of the orders of the general term being affirmed, and should be guaranteed by the giving of proper security. We do not impose any such condition, or say that , the defendants ought to agree to it. All that we do say is, that we should not be justified in staying the sale any longer, unless the plaintiff can be secured in some way against the possibility of a diminution in the value of his interest; and unless something of this kind can be suggested, the motion for a stay must be denied.
ITT. March, 1867. Appeal to the court of appeals from order denying new trial of issues, and from interlocutory judgment.
The plaintiff' brought on the cause generally at a special term in I860, for a hearing. Interlocutory proceedings for sale of the property, and a reference to determine relative interests of the parties, was ordered.
The facts relating to the judgment appealed from sufficiently appear in the opinion of the court.
Henry A. Cram, moved to dismiss the appeal.
F. Kernan and George. H. Reynolds, opposed.
■ In the .views above expressed, Judge Beady.concurs.
By the Court.—Hunt, J.
J.—This action was brought for the purpose of closing the affairs of a partnership alleged to exist between the plaintiff and-the defendants in the publication of the newspaper called the Dew York Express.
During the year 1864 an application was made and granted for the settlement of certain issues to be tried by a jury. After the trial of such issues by the jury, the plaintiff brought on the cause generally for a hearing and trial at special term, held in February, 1865, and. moved for judgment on the findings of the jury. The motion of the plaintiff for judgment was granted, and the judgment order declared the rights of the parties to the subject-matter of the partnership. It further directed a sale of the Express establishment under the direction of a *405 referee named, and ordered the referee to take and state an account of the partnership dealings and transactions. It also directed the payment of partnership debts, of cqsts and expenses ; that the referee file his report; and the question of the plaintiff’s costs was reserved until the coming in of the report of the referee. This order also recited an order for the special term, made February 8, 1865, denying a motion'for a new trial of the issues submitted to the jury, founded upon a case containing the pleadings, the issues, the testimony, the findings of the jury, and exceptions. The order thus recited is not itself among the papers before us. The appeal to the general term from this latter order, and from the j udgment order of February 21,1865, were apparently heard in one motion, and denied in one order on the twenty-ninth day of September, 1866. From this order an appeal was taken to this court by the defendants, and the plaintiff now moves to dismiss the same, on the ground that no appeal will lie from such order.
"The judgment order of February 21, 1865, is not an appeal-able order. It. is not a judgment of which a record has been made and filed ; but an order for judgment simply. Considering it, however, as a judgment, it is not a final judgment, but interlocutory merely ; and no appeal from a judgment as such lies to this court, except where the judgment is final. When the report of the referee shall have been made, and judgment entered therefor, additional questions may arise upon which the judgment of the special and the general term may he needed, and from which an appeal may be taken to this court. When it shall be thus brought up, the judgment will be final, "and one appeal to this court will embrace all the questions thus presented, or that may be embraced in any previous order affecting the merits of the case. It is not the practice to allow a case to come to this"court upon a fragmentary trial by instalments, and in different forms. It can come once only, and in one form, when the merits are to be investigated. Until the conclusion of the reference, and tlie entry of final judgment upon it, no appeal can be brought to this court (Tompkins v. Hyatt, 19 N. Y., 534; Holston Bank v. Vail, 15 Id., 593). It was stated upon the argument that a contrary decision had been made in Stevens v. The Buffalo, Corning & New York R. R. Co., not reported. I am satisfied that this is an error. *406 The affidavits in that ease showed that an appeal was. pending Upon a final judgment subsequently made in- the ease, and the motion. to dismiss was denied, probably upon the ground that the first appeal was practically waived, and that a motion to dismiss the same was not justified, or -it might have been denied upon the ground that the judgment became final after the reference-had been had and the report of the referee confirmed by the court (4 Comst., 415). The opposing affidavits are not on file with the 'clerk of this court. Upon .consultation with my brethren, they concur in the opinion that the rule is as I have stated it above, and that if any case has been decided'differently, it has been done inadvertently, or without due consideration.*
It is supposed however, that a different rule prevails where a motion for a new trial is denied, and that the'existence of the order of February 8,1865,' denying a motion on the part of the defendants for a new trial upon the issues settled, when the denial was affirmed in the order of the general term of "September 29,1866, makes such order appealable to this court.
'The section of the of the Code of Procedure cited by the appellants plainly authorizes an appeal from an order granting or refusing a new -trial, in the' case of a trial occurring in the •ordinary course of practice, and where a judgment has been entered. But there was no trial of this -action óh the occasion suggested. That trial took place afterwards, on the twenty-/ first day of February, 1865, and the whole ease was never before the court till that day. There had -been-a previous trial of certain questions in the. case, the determination of whi'ch it was supposed would aid the court in ascertaining the merits of the case-, when the -trial ¡itself should come on. It was a trial of the precise written questions submitted to the jury, and of nothing else. By the established practice those questions might embrace the merits of the case generally, or they might be limited to any portion of it. Such a proceeding is -not a trial of the -action, -but an examination of the particular questions submitted only; at a -subsequent time the actiqn itself must -be brought on for trial, when these preliminary proceedings are submitted to the court as a part of the proceedings in the case. An award of a feigned -issu'e, under the -former .practice in chan *407 eery, or the framing of issues, as now practiced, is a proceeding simply to inform the consciencé and judgment of the court before which the trial is had. The court to which the result is presented on the trial of the action is authorized to bestow upon it just that degree of attention to which it is entitled. It may rely upon it as satisfactory and conclusive. It may accept it in part, rejecting other parts. It may discard it entirely (Lansing v. Russell, 2 N. Y. [2 Comst.], 563; Candee v. Lord, 2 Id., 269). An award of issues is a matter of practice, and may be granted or refused in the discretion of the court. The granting of a new trial after a verdict upon a feigned issue was in the discretion of the chancellor, and not the subject of an appeal. If the result was right he accepted it, although errors might have intervened in reaching it. Such is the settled practice also in regard to verdicts upon issues settled (Code of Pro., § 72; Forrest v. Forrest, 25 N. Y., 501, where the whole subject is elaborately discussed by Judge Wright ; see also Clapp v. Fullerton, 34 N. Y., 190; Sclienck v. Dart, 22 Id., 420). The order is interlocutory, and not the subject of an appeal to this court, and it derives no additional authority from being connected with an order of the special term, denying a motion for a new trial of certain issues framed and settled in the manner I have mentioned.
Appeal dismissed.

 Compare Smith v. Lewis, 1 Daly, 452.