By the Court.—Grover, J.
It having been conceded upon the argument by the counsel for the appellant that the question as to the negligence of the defendant was, upon the evidence, proper for the consideration of the jury, it only remains to inquire whether the plaintiff’s neglect contributed to the injury received by him. It is conceded by the counsel for the plaintiff that it was incumbent upon him to prove not only that the injury received was the result of the negligence of the defendant, but that he was free from any negligence contributing thereto.
The law upon this subject may be regarded as settled in this State. That requires of the party to show that he has exercised such care and vigilance to avoid danger, as prudent persons, conscious of the danger to which they may be exposed in the exercise of their right of way at railroad crossings, usually exercise.
That this requires a vigilant use of the ear in listening, and of the eye in looking for approaching trains to avoid collision with them (Gozales v. N. Y. & H. R. R., 38 N. Y., 440; Ernst v. Hudson River R. R., 39 Id., 61; this case, 40 Id., 9).
That this care must be exercised irrespective of the negligence of the defendant (Baxter v. Troy & Boston R. R. Co., 41 N. Y., 502).
Where there is a conflict in the evidence as to *31 whether this care has been exercised, the question must be submitted to the jury, but when there is no evidence tending to establish it it is the duty of the court to grant a motion for a nonsuit. It follows that in this and all like cases, the evidence must be examined upon the motion, to ascertain whether it shows the party injured free from negligence.
In the present case it appears that the plaintiff, having occasion to cross the road of the defendant in St. Joseph’s Street in the daytime, when there were five parallel tracks running north and south, went up the walk to the road on the north side, and found that there were cars standing upon the two northern tracks eastwardly from the street for some distance, and slightly extending into the street. The plaintiff testifies that upon his arrival at the track, he ascertained by looking that no engines were attached to these cars. That a large freight train with bell ringing was approaching the crossing from the west, which had nearly arrived at the crossing; that he went upon the track behind the standing cars, and waited for this train to pass, listening for other trains. That he he could not hear any ; that the standing cars prevented his seeing the tracks to the east, until he had passed the tracks upon which he stood. That hearing nothing indicating the approach of any other train, when the freight train had passed, he stepped forward to cross, and just as he passed the standing cars, he looked to the east, but was not far enough past to enable him to see the road more" than eight or ten feet in that direction. That he took another step forward, and turning to look to the west, and that as he was taking another step forward and turning to look again to the east, his shoulder was struck by the tender of an engine running backwards rapidly to the west, he was thrown down thereby, and in some unknown way received the injury. The other testimony showed there was a space between the second *32 track upon which the cars were standing and the track upon which the engine was backing, of about five feet, upon which the plaintiff might have stood in safety, and standing there might, by looking east, have seen the approaching engine and thus ha/e avoided the danger.
It is insisted by the counsel for the appellant that this evidence showed that the plaintiff was negligent, and there being no conflict upon this point, it was the duty of the court to nonsuit. The question thus presented is not free from difficulty. In its examination the truth of the plaintiff’s testimony must be assumed. From this, it appeared that he had already listened for a train, and hearing none, an'd from the possition of the cars not being able to see' any approaching from the east, stepped forward, and as he did so, just as he passed the cars, looked to the east but could only see the track for eight or ten feet, and seeing no train, he looked to the west, took a step, and as he was taking another and turning to look to the east was struck. That it all occurred in a second or two. It was as much the duty of the plaintiff to look to the west to protect himself from danger from that direction, as it was to the east, consequently his doing so cannot be regarded as negligent. From his testimony it appears that the plaintiff, as he advanced to cross, used his eyes in looking in both directions to the extent of his ability, during the very brief time until he was struck by the tender. If his testimony be true, no negligence can be imputed to him in this respect. This can be done only when there is time sufficient after the party has opportunity to see the track in both directions. Then he is guilty of negligence if he fails to avail himself of such opportunity. The question in this case comes to this, whether the defendant was guilty of negligence in not stopping upon this space of five feet, and looking up and down the tracks. This would be holding him to a degree of care beyond what has been *33 required in any of the adjudged cases in this State, and I think beyond that exercised by very many prudent persons (Renwick v. N. Y. Central, 36 N. Y., 132). Besides, it did not appear that the plaintiff, although well acquainted with the tracks, was at the time aware that he could stop with safety upon the space between the tracks, but rather the contrary, by his not going and standing there while waiting for the freight cars to pass, instead of on the track behind the standing 'cars. Upon' the whole, my conclusion is that the nonsuit was properly denied. The judge charged the jury in substance, that if the noise made by the freight train and the ringing of the bell upon the engine attached thereto, was such that the bell upon the engine that struck the defendant if ringing could not be heard at the crossing, it was for them to consider whether it was not the further duty to blow a whistle or give some other signal, so as to notify persons at the crossing of its approach. By this I understand the judge as referring to signals to be given on board the engine, and not those to be given by persons employed for that purpose at the crossing or elsewhere. So understood, the charge is not in conflict with the decision of this court in this case, but in accordance therewith. It was' then held that to exonerate a railroad company froin negligence in running its trains over street crossings, they must run with care and prudence- to avoid danger to those exercising the right of way in common with it at such crossings. The like was held in Griffen v. N. Y. Central, 40 N. Y., 34, and in the same case by , this court during the present term. This includes the duty of so running the train that its approach to the crossing may be heard by one listening there for that purpose. If, from the noise caused by other trains, the bell cannot be heard, other means must be resorted to. However unlikely to occur, in case it does, the rule as laid down by the judge is correct.
*34 An ordinance passed by the common council of the city of Rochester, pursuant to power conferred upon that body by statute, prohibiting the running of engines, &c., by any railroad company at the place where the injury was received, at -any greater speed than eight miles an hour, and imposing a penalty of fifty dollars for each offense, was received in evidence.
Other evidence was given by the plaintiff tending to show that the engine was running at a speed greater than that permitted by the ordinance. The judge in substance charged the jury, that if they were satisfied from the evidence that the engine was so running at the time, and this excess of speed beyond what the ordinance permitted contributed to the injury received by the plaintiff, it was some evidence of the negligence of defendants. The exceptions taken by the defendants’ counsel to this part of the charge, and to the competency of the ordinance as evidence, present the question whether this part, of the charge was correct.
This question only need be examined, as it is manifest that the competency of the evidence will depend upon its determination. It was held in Brown v. Buffalo & State Line R. R. Co., 22 N. Y., 191, that running trains at a greater" rate of speed than permitted by a similar ordinance was not evidence of negligence in fact, and involved no consequence except liability for the penalty to the municipal corporation. That it only made the so running of trains unlawful sub-modo, not in an absolute sense, so as to make the defendant liable to third parties for all its consequences. If not so liable for all when producing an injury, it is difficult to see how it would be liable for any. It must, I think, be conceded that this case, if correctly decided, •condemns that part of the charge under consideration. The only authorities cited are those holding that payment of the penalty prescribed, is all the criminal *35 punishment that can be imposed for the violation. There can be no doubt of the correctness of this posi ordinance made the running of trains at a speed prohibited by it unlawful? Can it be true that in a legal sense an act prohibited by law and a specified punishment and penalty prescribed for its commission becomes lawful by suffering the punishment or paying the penalty ? Certainly not. Whatever may be the views of causuists in this respect, the law regards all acts prohibited by the law-making power as unlawful, irrespective of the punishments prescribed for the violation of the law. Ordinances passed by municipal corporations pursuant to the powers of local legislation conferred upon them by the legislature, have the same effect as laws in the localities where thus adopted as if enacted by the legislature. This case was substantially overruled, by the same court in Jetter v. N. Y. & Harlem Railroad Company, 2 Keyes, 154. It was then held that running cars at the rate of speed in the city of New York prohibited by an ordinance of the city, was evidence of neglect. True, the ordinance itself did not declare the penalty for its violation. Surely this omission can have no effect upon the lawfulness of the act. Whether the punishment is determined with certainty, or left somewhat discretionary with the tribunal before which the conviction is had, is wholly immaterial in respect to that question. The act in either case is alike unlawful. The question then is whether the unlawfulness of the act by which another receives an injury is any evidence against the party committing the act.
Thus stated, the question can only be answered in one way. That answer shows that the charge in this respect was not erroneous. I have examined the exception taken to the question as to how the line of view would be changed by removal of the standing cars *36 one foot further from the street. It was not well taken. It called for a fact, not an opinion.
The judgment must be affirmed, with costs.
Judgment affirmed, with costs.