MINNA KOSTER, AS ADMINISTRATRIX, &C., OF HENRY KOSTER, DECEASED, Respondent, *against* BARTHOLOMEW NOONAN, Appellant.

(Decided April 7th, 1879.)

In an action to recover damages for negligence in blasting rocks within the limits of the city of New York, evidence that there was a failure to comply with the city ordinances in regard to blasting is evidence of negligence to go to the jury.

In such a case, where experts in the use of explosive compounds have testified that if the corporation ordinances had been complied with, and a proper charge of the explosive material used, the explosion would not have thrown pieces of the rock to the distance at which the plaintiff's intestate had been struck and killed, and the witnesses for the defendant positively swear that a proper charge was used and all the requirements of the corporation ordinances complied with, and there is no other evidence of negligence in the case, the complaint will not be dismissed nor a verdict directed for the defendant, but the question of negligence will be left to the jury, and a finding by them that the defendant was negligent will not be set aside.

In an action for negligence in the explosion of a blast within the limits of the city of New York, an expert in the manufacture and use of explosives in blasting may properly be asked whether a blast covered in a specified manner, being the

manner prescribed by a city ordinance, could throw portions of rock a distance of 280 feet, the person injured by the blast having been struck by a portion of the rock when at that distance from the blast.

Exceptions to the charge of the court, taken, by consent of the respondent, after the trial, are not available on appeal where the errors excepted to were not brought to the attention of the court and correction requested before the verdict was rendered.

The facility with which new trials are obtained for slight or technical errors, which are excepted to, commented on, and declared to be one of the greatest defects in our present system of jurisprudence.

APPEAL from a judgment of this court, entered upon a verdict for plaintiff rendered at a trial term.

The action was under the statute to recover damages for the death of plaintiff's husband from the alleged negligent firing of a blast in 10th Avenue, N. Y. City. The defendant was a contractor, engaged in excavating a sewer for the city. The plaintiff put in evidence a city ordinance, prescribing the precautions to be observed in blasting, and introduced evidence tending to show that some of these precautions were not observed. The jury rendered a verdict for the plaintiff for $4000.

*Matthew Daly*, for appellant.

*Clarence Lexow*, for respondent.

CHARLES P. DALY, Chief Justice.—The question put to Ditmarr was a proper one. It specified what is required in a blast by the corporation ordinance, and then asked if, in a blast exploded in the excavation of a sewer, whether portions of rock could have been thrown 280 feet from the point of discharge, which was the distance at which the deceased was from it when he was struck by a piece of rock and killed. The witness was a most competent expert, being conversant with all the explosive compounds now manufactured. He knew them all thoroughly. He was the inventor of the giant powder, which was the compound used on this occasion ; was employed in manufacturing explosive compounds, and had made thousands of blasts, in all kinds of rocks

and stones, in every kind of blasting; and on his cross-examination afterwards, testified that blasting can be so conducted as to make it perfectly safe, and to avoid danger of every kind; and that he could blast a well in a cellar without injuring the house. His answer to the question was, that with an overcharge portions of rock might be thrown to that distance, but not with a proper charge.

The failure to comply with the ordinance of the corporation in blasting was evidence to go the jury, on the question of negligence. (*Beisiegel* v. *N. Y. Central R. R. Co.*, 14 Abb. Pr. 29; *Jetter* v. *The N. Y. & Harlem R. R. Co.*, 2 Abb. Ct. App. Dec. 464.) And the testimony of the witness, that missiles could not have been, thrown that length with a proper charge, made it incumbent upon the defendant to show what had been done in preparing the blast, and created a question for the consideration of the jury, although the defendant's witnesses testified afterwards that everything which the ordinance requires had been complied with.

The appellant seems to think that the testimony of the defendant's witnesses was conclusive upon this point; that it entirely disposed of the testimony of the expert; and that it was the duty of the court, upon that testimony, to have granted the motion to dismiss the complaint.    On the contrary, the case was properly submitted to the jury; for the statement of these witnesses, that every precaution had been taken which the ordinance requires, was, notwithstanding its positive character, to be weighed against the testimony of the expert, that, if the ordinance had been complied with, portions of rock could not have been thrown that distance. In this respect there was conflict; for, as the judge said, if the opinion of the expert was controlling, the inference would be that the logs had not been placed as described; or that a charge of the proportion stated by the defendant's witnesses had not been put in the cavity; and that these witnesses either intentionally misstated the facts or were unintentionally mistaken as to what had been done, rendering the question one exclusively for the consideration of the jury.

It does not follow, as matter of law, that the jury and the court were bound by the statement under oath of these witnesses as to what had been done. It is a matter of familiar experience in actions for injuries arising from negligence, that witnesses charged with the performance of certain duties, to the omission of which the accident is attributed, seldom admit that there was any negligence on their part, but generally testify that everything was done by them that ought to have been done. Notwithstanding the positive statements of the policeman Connor, whose duty it was to see that the corporation ordinance was complied with, and the foreman and his assistants, who prepared and exploded the blast, that everything was done that the law requires, the deceased was killed by a piece of rock at a distance of about 280 feet from the point of explosion, which Ditmarr, as an expert, declared could not have taken place unless the blast was overcharged or not properly covered, and who, as I have heretofore said, testified that blasting is dangerous only when it is carried on by those who do not understand how to do it; that it can be conducted so as to entirely avoid injury or damage of every kind. After all the defendant's witnesses had testified the expert was again called, and having repeated to him what had been done, according to the testimony of these witnesses, he was again asked if detached pieces of rock could have been thrown as far as 280 feet from the point of discharge, and he said they could not if the logs had been properly placed. According to the defendant's witnesses, the accident ought not to have happened; and yet it did happen, and the plaintiff's husband was killed. Falk testified that the air was filled with hundreds of flying stones, and that stones of 75 pounds weight were thrown as far as Eightieth Street.

In respect to contributory negligence on the part of the deceased, the appellant insists that after being warned by the flagman, Koster went to the place of greatest danger, and was guilty of the utmost negligence. The blast was exploded on the Tenth Avenue, 20 feet south of Seventy-eighth Street, and when warned he crossed from the point where he

then was, on the south-west corner of Tenth Avenue and Seventy-ninth Street, diagonally to the north-east corner of the avenue and Seventy-ninth Street. He went in the same direction as one of the defendant's flagmen, who was close by him, only about two or three feet apart;—the three—the deceased, the flagman and Falk—walking together towards the north-east corner of the avenue and Seventy-ninth Street, Falk walking in the middle, the deceased on one side and the flagman on the other, the flagman being nearest to the blast when the piece of rock fell that killed the deceased, the blast having been exploded before the flagmen took up their posts.

I wholly fail to see, as a matter of law, how this can be pronounced contributory negligence on the part of the deceased. The first flagman, Sweeney, testifies that as he came up he called to Falk, the companion of the deceased, to leave, and that when he was on the other side of Seventy-ninth Street, and upon the Tenth Avenue, that he turned back and saw Falk and the deceased crossing the avenue towards the north-*west* corner of Tenth Avenue and Seventy-ninth Street; and that he hallooed to them " not to go that way, as he considered it not a safe place to go;" that they paid no attention to him, and the blast went off. In all this he was directly contradicted by Falk, who testifies that the flagman did not call out to him, as he testified, and that the way he came to know that the blast was going off was when the flagman came up and went past him. He said: " I heard no one call out to get out of the way before the blast took place. I don't think I am deaf." And instead of crossing from east to *west*, as Sweeney testified, going to the north-west corner of Tenth Avenue and Seventy-ninth Street, he testified that he and the deceased, when he saw the flagman going up the street, crossed immediately from the *south-west* corner to the *north-east* corner of the avenue and Seventy-ninth Street with the second flagman, and were facing towards the *east*, walking towards the east corner, and before they reached within twenty feet of what he called the east corner of Seventy-ninth Street that the blast went off, and

the deceased was killed. The judge, therefore, properly left the question of contributory negligence to the jury.

Thirteen exceptions are presented in the case to the judge's charge. These exceptions, it appears from a statement in the respondent's points, were taken under a stipulation that the defendant should be at liberty to take his exceptions to the charge at any time after the trial. An appellate court should not sanction this mode of taking exceptions, even with the plaintiff's consent. There is no reason why another court and another jury should be called upon to try the cause, when, if there were any error in the charge in stating the law or the evidence, it might have been corrected, if the judge's attention had been called to it, at the close of the charge and before the jury had retired. The effect of this mode of taking exceptions is strikingly illustrated in the present case, for we are asked to reverse the judgment because the judge said that the logs were eight instead of ten feet long; that the only witnesses who testified as to what precautions were taken were the foreman and his subordinates, and that the tamping was ten feet twelve inches instead of three feet two inches. If the judge's attention had been called to these mistakes in the evidence at the close of his charge he could at once have corrected them, and no doubt would have done so, but when the case was closed by the retiring of the jury and the rendering of the verdict this could not be done.

These exceptions to misstatements of the evidence would not, however, have been good, even if taken before the jury had retired, for the proper mode of correcting the error of the judge was to call his attention to what the evidence was on these three points, and if the judge did not then correct these mistakes an exception to his refusal to do so would lie. I do not consider any of the exceptions taken to the law as laid down by the judge as good; but instead of passing upon them specifically, I prefer to rest on the objection that exceptions taken in this way, even with the plaintiff's consent, are unavailable, as no opportunity was afforded to the court to correct any error or mistake before the jury retired to con-

sider upon their verdict—if there were any errors in the charge. Seven requests were made to the court to charge. The charge was, in all respects, a fair one. It presented the case as favorably for the defendant as for the plaintiff. It stated the law clearly and correctly, and I am not disposed to reverse the judgment because the propositions of law were not put in the precise form the defendant wanted them. The first, second, third and seventh requests had been already charged. The fourth, fifth and sixth requests were substantially correct, but, in my opinion, they had been sufficiently covered by the charge, which was broad and comprehensive, and as favorable to the defendant as he could have asked for. One of the greatest defects in our system of jurisprudence in this State, in my opinion, is the facility with which new trials are obtained where a number of requests, as in this case, are made after the judge is through, in the expectation that a new trial will have to be granted if, upon a critical and close comparison afterwards of the requests and the charge, it may be found that the judge has not put the legal proposition in as precise a form as it appears in the request, an expectation which appellate courts have greatly, and in my opinion injudiciously, encouraged by setting aside verdicts for slight and technical errors, which had no effect upon the decision of the jury. A late deceased judge of the Court of Appeals declared that justice would be promoted if courts exercised their prerogative of granting new trials more frequently. My experience, which has been much longer and more extensive upon the bench than the judge's by whom this remark was made, is exactly the contrary. It is that injustice, rather than justice, is the result, in the great majority of cases, from the facility with which new trials are obtained. As a matter of general experience, the verdict upon the second trial is the same as the first, involving delay and increased expense, which are not compensated for by the costs and the interest, to say nothing of the anxiety of mind induced by prolonged litigation. It not unfrequently happens that a failure of justice arises from the loss of evidence by the death of witnesses before

the cause can be tried again, or a change takes place in the pecuniary condition of the defeated party, resulting in the loss of the claim before judgment is obtained upon the second trial, of which many instances have been brought to my knowledge in this court. I do not hesitate to say that the facility with which new trials are obtained upon purely technical grounds has become a great public abuse, and, in my opinion, if appellate courts were less disposed to set aside verdicts for technical errors, which, in the great multitude of cases, have had no effect upon the verdict, and were to adopt the rule applied in the trial of issues of fact by a jury in equitable actions, that an error in the admission or exclusion of evidence, or in the ruling or direction of the judge, may be disregarded by the appellate court if the court is of opinion that substantial justice does not require that a new trial should be granted. (Code of 1877, § 1003.) This is the rule of the Common Pleas in England (*Doe* v. *Taylor*, 9 Brig. 561; *Hosford* v. *Wilson*, 1 Taunt. 14; *Nathan* v. *Buckland*, 2 B. Moore, 153), and which has been generally followed in the other States; whilst in this State we have adhered to the strict and technical rule of the King's Bench, which has nothing to support it except an over-estimated apprehension that if this strict rule were not enforced it might cause the rules of evidence upon trials to be less carefully considered. (*Crease* v. *Barret*, 5 Tyrwh. 475; *De Rutzen* v. *Farr*, 4 Ad. & El. 53.) In my judgment, if the rigorous rule that has been applied in this State was relaxed by appellate courts for the exercise of a sound discretion, in refusing to set aside verdicts, the ends of justice would be promoted, and the community would be better satisfied. (*Forrest* v. *Forrest*, 25 N. Y. 509, 510; *Clark* v. *Brooks*, 2 Daly, 162, 163, 164.)

Entertaining these views, I think the judgment should be affirmed.

VAN HOESEN, J.—The defendant's misfortune is, that in attempting to establish a defense he proved against himself a state of facts which convicts him of negligence of the grossest

description.   If he took all the precautions described by his witnesses, the accident must have happened through the inherent dangerous qualities of the blasting powder.  We have then a case where a man blasting in close proximity to a thoroughfare in a crowded city uses a powder which, in spite of the greatest precaution, is so unsafe and uncontrollable that it will hurl through the air rocks weighing 75 pounds, and send them upon the street more than 400 feet away from the blast.   To use such a substance in such a place is gross negligence, which deserves to be punished by exemplary damages.

The judgment should be affirmed with costs.

Judgment affirmed with costs.