WILLIAM S. BARTON *v.* ISAAC HERMAN AND JOHN BARRY.

In a proceeding to foreclose a mechanic's lien, the court may, in a proper case, render a judgment *in personam*, as well as *in rem*, and in order to avoid cir-cuity of action, the rights and equities of all the parties, whether they appear or not, among themselves and as against any owner, may be adjusted and finally settled.

Where a foreclosure proceeding is instituted in good faith, and facts exist requisite to acquire a lien, and the court has obtained jurisdiction of the subject-matter and of the parties, by the creation of a valid lien and the service of the neces-sary notice, a personal judgment may be rendered in favor of a lienor for the amount due him by the owner, notwithstanding the lien may have been lost by reason of not being renewed at the expiration of the year.

The court may, on motion, in certain cases, and for sufficient cause, pass upon and control the acts and proceedings of a referee, while the reference is pending and in a proper case set aside his report, or stay proceedings thereon.

SPECIAL TERM, DECEMBER, 1870.

MOTION to stay the entry of judgment, and set aside referee's report.

This was an action or proceeding brought by the plaintiff

Wm. S. Burton, a subcontractor, against Isaac Herman, owner, and John Barry, contractor, to foreclose a mechanic's lien on premises No. 19 East Fifteenth street, in the city of New York.

The cause was referred to Thos. H. Landon, Esq., referee, to hear and determine.

The matter was tried before the referee, and on the 27th day of April, 1870, he rendered his report in favor of said Barry for $3,745, and costs, subject to the payment of the lien filed by the plaintiff Barton, amounting to the sum of $1918.65 and costs.

It appeared that the notice of lien of Barry, the contractor, was filed on the 14th day of April, 1869.

On the 9th day of April, 1870, an order continuing said lien was procured from a judge of this court, and on the same day a certified copy thereof was taken to the county clerk's office, where it was endorsed by one of the clerks, as follows: "Filed, 9 April, 1870.　11 H. 15 M."

It was then in accordance with the practice in the county clerk's office, taken by the party who acted for the lienor into another room, for the purpose of being there filed, and entered in the mechanics' lien docket, when it was discovered that the original lien was filed on the 14th April, 1869, whereas the order purported to continue was filed on the 13th April. Under these circumstances, it was found that the lien could not be continued, and the person acting in behalf of Barry took the order away with him, saying that he would have it corrected and returned; but the same was never returned to or filed with the county clerk.

Upon these facts, Herman, the owner, made this motion that the entry of judgment be perpetually stayed, and the referee's report set aside, and for such other and further relief as might be just.

*A. Blumenstiel*, for motion.

*W. McDermott*, opposed.

LOEW, J.—This court held at special term, in the case of *Mathews* v. *Daly* (7 Abb. N. S. 379, *ante*, p. 214, note), that notwithstanding an action has been commenced to enforce or foreclose a mechanic's lien, under the Act of 1863 (Laws of 1863, chap. 500), such lien ceases and is at an end after one year from the creation thereof (unless continued by order of the court before the year expires); and further, that, in such a case, the lien having expired and absolutely ceased by its own limitation, no order discharging it is requisite.

The principles decided in that case have been affirmed by the general term in *Stone* v. *Smith* (*ante*, p. 213), and the law in respect to the points in question may, therefore, be considered as settled, at least so far as this court is concerned.

In the case at bar, it is conceded that the order continuing the lien, although obtained before the expiration of the year, was never in reality left or filed with the county clerk, nor was the same ever docketed or entered in the proper book. The statute requires not only that the order of the court continuing the lien be obtained, but also that a new docket be made stating such fact.

This act of making a new docket is an essential pre-requisite to the continuation of the lien, and the law in this respect must, therefore, be strictly pursued.

It may very well be that where a party has done all that lies in his power, by procuring the necessary order from the court, and filing the same with the county clerk, within the time limited by law, and that official has either lost or mislaid the same, or through inadvertence or mistake omits to make the new docket, the court may, in its discretion, afford relief, provided the rights of *bona fide* purchasers do not intervene, by ordering the docket to be made *nunc pro tunc*, as Barry's counsel contends should be done in this case. But here the lienor did not do all that lay in his power. When the county clerk declined to receive the order, on the ground that the lien which was sought to be continued did not come within the purview thereof, the lienor should have made immediate application to the court to have the mistake therein rectified, and then filed the same with the county clerk. This he could have

done without much labor, and might thus have saved his rights.

But he has done neither the one nor the other to this day, and is therefore guilty of laches, and cannot complain if he has lost the benefits of the statute.

It also appears, from an inspection of the original and certified copy orders referred to, and was conceded on the argument, that they were surreptitiously altered by erasing the word " thirteenth," in each, and interlining the word "fourteenth," without the knowledge or consent of the court. This was, to say the least, grossly improper and unprofessional conduct, which cannot be allowed to pass either unnoticed or un- rebuked. I am very willing to believe the statement made by counsel, that he himself had no knowledge of, and neither authorized nor sanctioned, the improper and irregular act in question ; at the same time, I cannot but regret that any one in his employ should have been so forgetful of his duty in the premises, as to lend himself to a proceeding which does not commend either him, or the cause he proposed to serve, to the especial consideration of the court.

But while I fully agree with the views entertained by the learned counsel who represents the owner in the action, in saying that the lien has ceased and come to an end, and that the lienor has not shown himself entitled to any relief looking towards resuscitating it—if indeed such relief could be granted ; still it does not necessarily follow, nor am I prepared to say, that he has lost all his rights in the premises.

Under the Lien law of 1851, it was repeatedly held by this court that the proceeding authorized by that act was a proceeding *in rem*, and not *in personam*, and that if the lien failed, the rights of the lienor in such proceeding were at an end ; and that in no case could a personal judgment be rendered, even for a deficiency, except perhaps where the proceeding was directly between the original contractor and the owner. (*Quimby* v. *Sloan*, 2 E. D. Smith, 594 ; *Sinclair* v. *Fitch*, 3 *Id.* 677 ; *Cox* v. *Broderick*, 4 *Id.* 721 ; *Dennistoun* v. *McAllister*, *Id.* 729). It is true that under somewhat similar provisions in the Act of 1844 (Laws of 1844, chap. 305), in regard to the

manner in which the proceeding was to be tried and judgment therein enforced, to those contained in the Act of 1851 (Laws of 1851, chap. 513), the Court of Appeals, in the case of *Freeman* v. *Cram* (3 N. Y. 305), and in case of *Maltby* v. *Green* (1 Keyes, 548), expressed views which would seem to justify a different conclusion. But on a careful examination of the two cases, it does not appear to have been necessary in either, to determine the question as to the form of the judgment, in order to dispose of it; and the remarks of the learned judges who delivered the opinions may, in that respect, perhaps, be regarded as mere *dicta*. However that may be, I have found but one case (*Grogan* v. *The Mayor*, &c., 2 E. D. Smith, 693), in which a personal judgment was rendered in favor of a party, notwithstanding it was adjudged that he had no valid lien.

That case arose under the Act of 1851, as amended by the Act of 1855, which latter Act authorized, in addition to the judgment against the owner, a personal judgment in favor of the subcontractor against the contractor; but as the latter did not appear in the action, and judgment was rendered against him by default, the case can hardly be called an authority on the point, whether or not such judgment could be rendered, when the lien had failed and judgment was given in favor of the defendant owner.

But the Lien Act of 1863 in some respects materially differs from the prior lien laws.

Section 9 of that Act provides, among other things, as follows: "personal liabilities may be enforced by execution against the property of any party against whom a personal judgment shall have been rendered."

The contractor shall be personally liable to the lienor for the whole amount of his indebtedness, and the owner to the extent of the amount due by him to his contractor.

Again, under the Act of 1851, each individual lienor was compelled to commence a proceeding to enforce or bring to a close the lien which he claimed to have created and acquired; but by section 4 of the Act of 1863, each and every person having filed a notice of lien, at any time before final judgment

is rendered, is to be notified of, and made a party to, any proceedings which may be instituted. By section 2, they are to " prove their demand in the same manner as in ordinary actions at law," and every party shall have relief according to the rights of the parties, as they shall appear in evidence.

Section 5 prescribes that " the court shall proceed without regard to matters of form, which shall be amendable at all times while the proceedings progress, without costs, and judgment shall be rendered according to the equity and justice of the claims of the respective parties."

Section 7 provides that "the court may determine the rights of all parties, and the amounts due to each, * * * and such judgment or decree shall be made thereon as to the rights and equities of the several parties among themselves, and as against any owner, as may be just."

In view of all these sections, it is evident that the makers of the statute intended to confer authority on the court in these proceedings to render a judgment *in personam*, as well as *in rem;* and further, in order to avoid circuity of action, the rights and equities of all the parties, whether they appear or not (section 7), among themselves and as against any owner, are to be adjusted, and finally settled and determined in the action or proceeding first commenced.

Doubtless, if it appeared that a party had never acquired a valid lien, he would not be entitled to a judgment in any form, and the proceeding as to him would either have to be dismissed, or judgment be rendered against him, as the case might be.

But where the proceedings are in good faith, and the facts exist which, according to the 1st section, are requisite, in order to acquire a lien, and the court has obtained jurisdiction of the subject-matter and of the parties, as in this case, by the creation of a valid lien, in pursuance of section 6, and the service of a notice in compliance with the requirements of section 5, I see no objection to the rendering of a personal judgment, notwithstanding the lien may have been lost by reason of not being renewed.

The language of section 9 of the Act, in my opinion, is

broad enough to authorize and warrant such a judgment, especially when taken in connection with the other provisions above referred to.

The object of the lien is to bind the real estate to which it attaches, and when a judgment is obtained, it relates back to the time of the filing of the lien, which may be enforced by a sale of all the interest the owner had in the property at that time, in order to satisfy the judgment. This advantage, of course, is lost when the lien ceases; but I apprehend that that is all the lienor loses. I do not think that he will be compelled to commence *de novo*, by resorting to the ordinary remedy for the collection of his claim, but may have a personal judgment against the debtor, in the proceeding then pending, for the amount that appears to be due him by the latter, which judgment will be a lien upon and bind all the real estate he may own at that time, and be as efficient to reach and appropriate any other he may possess as a judgment obtained in an ordinary action.

If I am correct in the views expressed above, and my brethren, upon consultation, concur in the result to which I have arrived, then it follows that the contractor Barry has no lien, and none should be adjudged in his favor on the property in question; but, on the other hand, he is entitled to a personal judgment for the amount due him by the owner.

But the counsel for the lienor Barry, on the argument, questioned the power of the court at special term to interfere with the report of the referee, either by modifying it, or setting it aside, he claiming that the only mode of reviewing the action of the latter being by appeal to the general term. To this doctrine I cannot assent.

Formerly a referee was considered an officer of the court, which exercised a constant supervision and control over his actions, and whenever good and sufficient cause was shown, the court would interfere and set aside his report, in the same manner as if it were the verdict of a jury.

But the Legislature has of late years greatly increased the powers of referees, and in many respects they now possess all the authority and can exercise all the functions of a court (Code,

§ 272), and their decisions can, in general, be reviewed only on appeal.

Nevertheless, I am of the opinion that the court may, on motion, in certain cases and for sufficient cause, still pass upon and control the acts and proceedings of a referee while the reference is pending, and, in a proper case, set aside his report, or stay proceedings thereon.

In the case before me, the lien did not cease by reason of the expiration of the year, until several days after the whole matter was submitted to the referee for his decision; and he, therefore, could not, and did not, pass upon the points involved in this motion. So too on appeal, nothing could be reviewed but the decision of the referee on the questions raised before and presented to him for his adjudication and determination. It is quite apparent, therefore, that the questions presented on this motion could not be reached on appeal, and that the only mode in which the fact that this lien has ceased, could be brought up for the consideration of the court, was, in a summary way, by motion, as was done in this case.

The report of the referee, in so far as it adjudges the defendant Barry to have a valid lien on the premises therein mentioned, should be set aside, and the entry of judgment in that respect stayed.

Ordered accordingly.