PHILLIP C. HUBBELL *v.* JOHN SCHREYER AND OTHERS.

Where, under the mechanics' lien law of 1863, the owner admits that a certain amount is due by him under the contract, and that amount is insufficient to satisfy all the liens, so that the question of priority of liens becomes material, or the validity of any lien is questioned, the report of the referee, as the statute directs, is to be in a summary manner, as in claims to surplus moneys in mortgage cases, to enable the court to distribute the fund to the parties entitled to it; which report does not, when filed, like a report upon the issues, stand as the decision of the court, but eight days must elapse after the service of notice of the filing of it, that exceptions may be filed and served, which exceptions must be heard and passed upon at the special term, before the report is confirmed or becomes absolute.

But if the owner deny that there is anything due by him to the contractor, or interpose any defense, so that the question is the liability of the owner, or the existence of a fund in his hands to which a lien can attach; then an issue is created between the owner and the claimants, and if the trial of this issue is referred, the report of the referee, when filed, stands as the decision of the court, and is reviewable only by an appeal to the general term.

The foreclosure of a lien, under the mechanics' lien law is a matter of equitable jurisdiction, and the course of procedure is in accordance with the practice of courts of equity, except so far as it has been modified by statute.

The object of the law in requiring the notice of the lien to state the amount claimed, and *from whom,* is in order to distinguish the claim of a subcontractor, who has simply a lien on the building to the extent of the amount which may be due from the owner to the contractor, and the claim of one having a contract directly with the owner, who has not only a lien upon the building, but the right also to a personal judgment against the owner.

Where the claim was due to *three* persons jointly, and the notice stated that it was due to one of them only, *Held,* that the notice did not comply with the provision of the statute requiring that the notice shall state " *to whom* the amount claimed is due," and that, consequently, no lien was created by it.*

---

* The statute, in a previous section, says, that " no *variance* as to the persons named as contractor, owner, or debtor," in the lien, notice, &c., shall impair or affect the rights of the claimants; but stating in the notice that the claim is due by a person therein named, when the contract was made with and the claim is due by a person not referred to in the notice at all, is not a variance, but a defect of substance. A mistake in the name of the person who made the contract, as to call him Peter, when his name is Paul, may be a variance; but to state in the notice that the contract was made by a certain person, who is correctly named therein, when in fact it was made by another person, is a defect of substance.

Hubbell v. Schreyer.

The lien given by the statute being a personal right, the right to create it cannot be assigned or transferred to another. Whether, where two of three joint contractors relinquish all their joint interest in the claim to their co-contractor, he can acquire a lien by stating in the notice filed that the claim is due to him, *Quære.* Where he filed such a notice, and his co-contractors, after the filing of it and the institution of proceedings to foreclose the lien, assigned all their joint interest to him; *Held,* that this would not cure the defect in the notice; that no lien can be created where anything is omitted, which, by the statute, is expressly required in the notice.

Where the claim is against the owner, it does not invalidate the notice that it states that another (in this case the contractor) is jointly liable with the owner. It is sufficient that it states that the amount is claimed from the owner upon a contract made with him, and that the joint responsibility of another is coupled with him is immaterial. It is a matter of defense for the person so joined, but not a defect of which the owner can take advantage.

The filing of the notice is the foundation of a proceeding in which a personal judgment may be rendered against the party who ordered or contracted for the work or for the materials, and it is his right that any decision or judgment that may be rendered in his favor upon the contract should be conclusive upon the parties to it.

Under the act of 1863 (which differs in this respect from the acts of 1851 and 1855), a claim against the contractor and a claim against the owner may be joined in the same notice, provided each claim is separately distinguished, and the court may enforce one as a lien upon the building to the extent of the payments due by the owner to the contractor, and as respects the other, not only enforce it as a lien upon the building, but render a personal judgment against the owner for the amount of it. But a claim stated in the notice to be against the contractor must, in the foreclosure of the lien, be shown to be a claim of that description, and it will not suffice to show that it is a claim founded upon a contract with the owner, and upon a claim stated in the notice to be against the contractor, a personal judgment cannot be rendered against the owner.

The lien attaches only to so much of the materials as were furnished within three months prior to the filing of the notice, even though all the materials were furnished under one contract, and the notice was filed within three months from the completion of the contract.

A personal judgment cannot be given for materials furnished more than three months before the filing of the notice of lien, unless all the materials were furnished under one contract, in which case *it seems* that the court having acquired jurisdiction in respect to the contract, by the action to foreclose a lien acquired

The statute afterwards, in sec. 6, distinguishes what is matter of substance in the notice; and it is not a variance, but a defect of substance, to say that the contract for work or materials was made by the one who contracted with the owner, when in fact it was made with the owner himself.

under it, it can give the relief which the statute contemplates, in the rendition of a personal judgment, under the rule that where a court of equity has gained jurisdiction of a cause for one purpose, it may determine the whole matter in controversy, to prevent further needless litigation or multiplicity of suits, and can give further relief without the assistance of a jury.

But where each item delivered constitutes an independent contract, as to which the statute of limitations would run from the day of its delivery, this cannot be done.

APPEAL by defendant Schreyer from a judgment entered on the report of a referee in a proceeding to foreclose a mechanic's lien.

The facts are stated in the opinion.

*Daivd McAdam,* for appellant.

*E. P. Rice,* for respondent Muldoon.

*G. R. Dutton,* for respondent Hubbell.

BY THE COURT.*—DALY, CH. J.—Before passing upon the *exceptions* to the referee's report, it will be necessary to consider a *general objection* as to the *manner* in which the report comes before us an appellate tribunal.

It is claimed that the reference in actions brought for the enforcement of mechanic liens is, within the meaning of Rule 39 of the Supreme Court, a reference, other than for the trial of the issues of the action, inasmuch as the amendatory lien law of 1863 (Laws of 1863, p. 862, ch. 500, § 7), provides that the referee is to report in a summary manner, as in case of claims to surplus moneys in mortgage cases. It is apparent that the person who drew the amendatory lien law of 1863, or who framed this particular provision, had no practical acquaintance with the nature of *reference of claims to the surplus moneys in mortgage cases* as established by the practice of the former Court of Chancery and regulated by the existing rules of the Supreme Court, or he would have known that a reference of *"the whole matter"* in a mechanic's lien case, so far as the right or liability of the owner may be in question, is an inquiry

* Present, DALY, Ch. J., and ROBINSON, J.

of a very different nature from that which arises in claims to a surplus fund in a mortgage case; as the former, when it arises, involves the *trial of an issue*, and the latter does not. A mortgage is foreclosed either by action or by advertisement, of which subsequent incumbrancers, such as mortgagees, judgment creditors, or those having the equity of redemption, are apprised either by being made parties to the foreclosure suit, or by being served with notice, if the foreclosure is by advertisement. If the subsequent incumbrancers have no right or interest in the premises, adverse to that of the mortgagees, they cannot, although parties, litigate in the foreclosure suit, for they are not permitted to contest their respective claims to the surplus, as between themselves, until it is ascertained that there will be a surplus (*Union Insurance Co.* v. *Van Rensselaer*, 4 Paige, 85; *Farmers' Loan &c. Co.* v. *Seymour*, 9 Id. 544).

Formerly the practice was otherwise, and the rights of the subsequent incumbrancers, with respect to each other were ascertained and reported upon by the master, previous to decree of sale (*Renwick* v. *Macomb*, Hopk. Rep. 277); but as the effect of this was to delay the mortgagee in the foreclosure of his mortgage, the practice was changed by a rule of the Court of Chancery (Rules of 1830, as amended in 1840), since which the present practice has prevailed. A reference is ordered to ascertain the amount due under the mortgage to the complainant, and to prior incumbrancers if there should be any among the defendants. Upon the coming in of this report, the decree of sale is made, and after the sheriff has sold, he applies the proceeds to the payment of the claim of the complainants and any prior incumbrancer's claim, and if after the payment of claims and all costs and charges, there is any surplus, it is brought by the sheriff into court, for the benefit of whoever may be entitled to it, and deposited by him with the chamberlain,—in this county, and in other counties with the county treasurer,—subject to the order of the court. After the filing of the report of the sale, any one having a claim to the surplus or to any portion of it, may file a notice of his claim, and upon this a reference is ordered to ascertain the validity of the claim, or generally who are entitled to the surplus.

If, however, the validity of the mortgage, or the amount due under it, is contested by the mortgagor, or by a subsequent incumbrancer, then an issue is created upon the pleadings, and the cause is placed upon the calendar and brought on for trial in the same way as other equity causes, which are tried by the court, unless the parties consent to a reference, or the issue is one referable under the 271st section of the Code ; and where the whole issue thus raised by the pleadings is referred, the report of the referee, by the 272d section stands as the decision of the court.

I have detailed the course of procedure in mortgage cases, as it will assist in the interpretation of the meaning of the amendatory lien law of 1863, not only from the reference then made to this particular procedure, but because there is a *close analogy between the foreclosure of a mortgage and the foreclosure of a lien.* The 7th section of this amendatory lien law of 1863, has provided that the court may take the proofs and determine the equities of the parties, the amount due to each, and by whom to be paid, or it may order any question to be tried by a jury, or it may "*refer the whole matter to a referee to examine and pass upon the rights of the respective parties, and report upon the same in a summary manner, as in case of claim to surplus moneys in mortgage cases.*" Where the *owner admits that a certain amount is due under the contract* which he made for the erection of the building, and that amount is insufficient to satisfy the claims of all the parties, so that the question of priority of liens becomes material, and which may also involve questions as to the validity of any of the liens in the event of any lien being disputed by the contractor or by subsequent lienors, then " the whole matter," in the language of the act, if referred, may be reported upon " in a summary manner, as in case of claims to surplus moneys in mortgage cases," for the proceeding is of the same nature, there being a fund, as in surplus moneys in mortgage cases, to which there may be many claimants, and the general inquiry being, who are entitled to it, or in what way it is to be distributed, apportioned, and to whom? All the claimants are actors ; that is, each appears as the representative of his own

interest, asserting his own claim, but not necessarily contesting the claims of others.

In *such a proceeding* there are no formal pleadings, and consequently there are no issues; for an issue, as defined by Blackstone, is, "when, in the *course* of *pleading*, the parties in a cause come to a point which is affirmed on one side and denied on the other. They are then said to be at issue; all their debates being at last contracted into a single point, which must be determined either in favor of the plaintiff or the defendant (3 Bl. Com. 313); or, as it has been more accurately defined by Chitty, it is "a single, certain and material point arising out of the pleadings of the plaintiff and defendant" (1 Chit. on Pleading, page 690, 6th Am. ed.), and is not necessarily confined to a single point, for there may be in the action several issues arising upon the same pleadings. *Nothing of this character arises upon a reference of the description under consideration.* It is simply an inquiry, summary in its nature, to enable the court to distribute the fund to the parties entitled to it, in which the report of the referee does not, when it is filed, like the report of the trial of the issues in the action, stand as the decision of the court, for, under the 39th rule of the Supreme Court, eight days must elapse after service of the notice of the filing of it, that exceptions may be filed and served; which exception, if taken, must be heard and passed upon by a judge at the special term before the report is confirmed and becomes absolute.

The proceeding to foreclose a mechanic's lien is, in the statute of 1863, denominated a "suit" and an "action" (sections 6–10), and calling it by the name which the statute gives it, there may be in the action, in the language of the 39th rule, a "trial of the issues." If the owner puts in an answer denying that there was anything due by him under the contract when the lien was filed, an issue is created which supersedes and suspends every other inquiry; for if that is found to be the fact, it puts an end to all further proceeding, and the action must be dismissed.

The foreclosure of a lien, whether it arises under the mechanic's lien law or otherwise, is a matter of equitable juris-

diction. It is an equitable, as contradistinguished from a legal remedy, and the course of procedure, whether it relates to the pleadings, the mode of trial, the evidence, or the remedy, is in accordance with the courts of equity, except so far as it has been modified in this State by statute. Issues of fact or of law may arise in courts of equity upon the pleadings, as they do in courts of law (Gresley's Equity Evidence); as, for instance, where the defendant answers an interrogatory in the bill, and the answer is replied to, the matter of the interrogatory is deemed to be at issue (Story's Equity Pleading, sections 36, 885, 886), the practice of courts of equity being in *most cases* to order the issue, whether of fact or of law, to be tried or decided in a court of law; but in this State where legal and equitable and legal jurisdiction is exercised by the same tribunal, such issues, when they arise in matter of equitable cognizance, are tried by the court as an issue in the action (*Draper* v. *Day*, 11 How. Pr. 439; *Elmore* v. *Thomas*, 7 Abb. Pr. 70; *Schaettler* v. *Gardner*, *ante*, p. 56). In the present case, issues superseding every other inquiry, were created by the owner's answer. He denied that the claimant, Hubbell, or the lienor, Muldoon, did or could acquire any lien upon the premises; that all the money due by him, the owner, to the contractor had been paid in good faith prior to the filing of either lien; that the contractor had paid whatever claim either Hubbell or Muldoon had; to which Schreyer, the owner, further added a general denial of every allegation made by either claimant.

In the notice of lien filed by Hubbell, he sets forth that he has a claim of $1,444 48 against the owner, Schreyer, and the contractor, Holt, for building materials furnished by him in pursuance of a verbal agreement had with Schreyer, the owner, and Holt the contractor; and in the notice filed by Muldoon he states that he has a claim against Schreyer, the owner, of $883, and against Holt, the contractor, of $1,349, for materials furnished in pursuance of an agreement, written and by parol, between Holt, the contractor, and Schreyer, the owner, and himself, Muldoon.

Hubbell claims upon a contract made by him with Schreyer the owner, and Holt, the contractor; but Muldoon claims to

have a lien for one amount against the owner, and for a different and larger amount against the contractor; and it is by no means clear upon his statement, whether he claims as a subcontractor with Holt, under the contract between Schreyer and Holt, or upon a contract made by him with Schreyer and Holt, upon which they were responsible for different amounts.

But, as the owner, Schreyer, denies each and every allegation in the complaint of Hubbell and in the answer of Muldoon, and as the contractor, Holt, put in no answer, an issue was created, by which Hubbell affirmed and Schreyer denied that the materials were furnished upon a contract made by Hubbell with Schreyer and Holt; which issue, if found in Schreyer's favor, put an end to all claim on the part of Hubbell against Schreyer, and to any lien upon the premises of which Schreyer was the owner. For Hubbell did not claim in his notice to have a lien upon the premises for materials furnished in pursuance of the contract made between Schreyer and Holt, but upon a contract made by himself with Schreyer and Holt (*Hauptman* v. *Halsey*, 1 E. D. Smith, 668; Nott's N. Y. Lien Law, pp. 10, 11). And as respects Muldoon, whether his claim be regarded as founded upon an alleged contract made by him with Schreyer and Holt, or upon the furnishing of materials by him in pursuance of the contract made by Schreyer with Holt, or in part upon both, an issue was created by Schreyer's answer, which went to the whole of Muldoon's claim, upon whatever ground it rested, inasmuch as Schreyer averred that he had paid Holt all that was due to him under his contract before Muldoon's lien was filed; and he objected in his answer to the regularity of the notices of lien filed in each case; and in addition denied each and every allegation in the answer of Hubbell and Muldoon.

There were, therefore, *two issues* to be tried in respect to the claimant Hubbell, and *three* in the case of Muldoon, the determination of which in the owner's favor, would put an end to the action; for although Holt had suffered it to go by default, a personal judgment could not be obtained against him; for to authorize such a judgment, it must be proved, or conceded, that a lien was obtained upon the premises for the work

or materials for the amount or value of which a personal judgment is asked against the contractor (*Donnelly* v. *Libby*, 1 Sweeny, 259; *Barton* v. *Herman*, 3 Daly, 323, 324, and the cases there cited).

As the pleadings stood, there were several issues to be tried : 1st. Whether the notices filed by either Schreyer or Muldoon were notices under which any lien could be acquired; 2d. The personal liability of Schreyer, assuming the notices to be sufficient under the statute ; 3d. Whether anything was due by him upon his contract with Holt, to which the lien of Muldoon could attach.   It is not essential in this case to determine whether the court, under the act of 1863, could order these issues to be tried by a referee, as the reference in this case was with the consent of all the parties; although if the point were material, I should not hesitate to hold that the authority given by the act to " refer the whole matter to a referee," is sufficient to authorize such a reference ; that the referee's report would have to be a finding upon the issues, and being a report upon the whole issue, would, under the 272d section of the code, stand as the decision of the court ; and that a report in a summary manner, as in case of claims to surplus moneys, is and can be made only when the litigation is *between the claimants.*   The statutes declare that upon the reference " every party shall be at liberty to take proof for or against any claim or lien, and such judgment or decree shall be made thereon as to the rights and equities of the several parties among themselves, and as against any owner, as may be just." This provision I regard as applying to the reference generally, whether the contract is exclusively *between the claimants themselves* or between the *claimants and the owner*.   I do not interpret it as providing, in all cases in which the whole matter is to be referred, that the report is to be as in case of claim to surplus moneys in mortgage cases.   Such may have been the expectation of the person who framed this provision ; as the object aimed at in many of the amendments of the lien law within the past twenty years, has been to do what is impossible ; to make a proceeding exceedingly simple which is in its nature complicated ; for to ascertain and adequately adjust the rights of all the parties—

the owner, the contractor, and the respective claimants,—where not only a lien upon real estate is to be enforced, but a personal judgment may be rendered between the proper parties for the enforcement of a contract, is a proceeding of so complicated a nature, that it can be carried out only by the method, rules and course of procedure, which *courts of equity* have devised for the due and proper adjustment of the rights of all parties in such cases. This statute, the last general amendment of the lien law, has now been in existence for more than nine years, and so far as this court is concerned, which is made by statute the appellate court for the review of these cases when brought in the Marine or District Courts, and which has had also to adjudicate during that time upon a large number of such cases brought here in the first instance, the practice has been, where the contest is between the owner and the contractor, or subcontractor claiming to have a lien upon payments to be made to the contractor, and where the only question is the *liability of the owner* or *the existence of a fund in his hand* to which the lien will attach, to regard the matter as the trial of an issue between the *owner and the claimants;* whether it is passed upon by the court, tried by a jury, or referred; in the latter of which cases the report of the referee, like the trial by a jury, stands as the decision of the court, to be reviewed only on appeal to the general term, brought within ten days after the entry of the judgment upon the referee's report. And this practice having been so long acquiesced in and followed, and being, as it is, a mere matter of practice, it ought not now to be disturbed, even if there should be doubt as to the construction of the statute. The reference being with the consent of all parties, and the referee's finding being upon the issues in this action, judgment was properly entered upon the filing of the report, and the appeal from the judgment to the general term is correct, and upon the exceptions filed brings under review the referee's findings upon the questions of fact and law.

Hubbell's notice of lien was of a claim against Schreyer as owner, and Holt as contractor, for material furnished in pursuance of a verbal agreement made, in the language of the notice, with the contractor and the owner. This is not, as the

owner claims, a statement on the agreement, one made by Hubbell with the contractor, and the other with the owner for the payment of the materials. If such were the construction of the notice, the lien could not be sustained, as the agreement of the owner would in that case, being necessarily collateral and as a promise, not in writing, to answer for the debt of another, it would be void by the statute of frauds. The true construction of the notice is, that it is a statement of a joint agreement on the part of Schreyer and Holt with Hubbell to pay him for the materials furnished. And regarding it in that light, there is nothing in the evidence to show that any such joint obligation was entered into by them. Holt contracted with Schreyer to furnish the materials, but it does not appear from the finding of the referee, or from anything that I have been able to discover in the evidence, that Holt contracted with Hubbell to supply them on his (Holt's) individual responsibility.

On the contrary, it appeared that Hubbell had ceased to furnish materials for the building, giving as his reason that Holt was a stranger to him ; that he was not a responsible man ; that he had stated or said that he, Hubbell, had been told that Holt had no means of his own, and was not to be trusted. The referee has found that the materials were furnished upon the credit of Schreyer as well as of Holt, but he negatives any such conclusion in respect to Holt. There is evidence that they were supplied upon the credit of Schreyer ; that is, upon his expressed promise to pay for them, made after Schreyer was informed by Hubbell, that he would not send goods to the building any more unless Holt paid for them. The materials appeared to have been ordered by Holt in the presence of Schreyer, after Schreyer had declared that he would pay for them, and the only conclusion warranted by the evidence is that they were furnished upon the exclusive credit of Schreyer, who said expressly before they were ordered, that if Hubbell was afraid of Holt, he (Schreyer) would see every cent's worth of materials sent to his buildings would be paid for ; *that he would pay for them.*

They were entered in Hubbell's ledger, " Thomas Holt for

John Schreyer," which it would appear, from Hubbell's evidence, was done to distinguish the mason work from the plastering work, Holt's name being entered for the one and Fridenburg for the other; in the same manner, " Orin Fridenburg for John Schreyer." It further appears that after the materials were furnished, Hubbell asked Holt for money, and gave him his (Hubbell's) bill to give to Schreyer. That there was no joint liability is very clear. There was no promise on the part of Holt, and nothing on Hubbell's part to show that the goods were furnished on the joint responsibility of Holt and Schreyer; or that Hubbell was first to look for payment to Holt, and upon his failure to pay, that Schreyer was to be responsible, which is the test whether the promise is collateral or not (*Brown* v. *Weber*, 38 N. Y. 189–190).

The only interpretation to be put upon the evidence is, that it was an original promise on the part of Schreyer, that if the materials wanted were furnished, he would pay for them.

The fact that the notice of lien filed set forth a joint contract, and that no joint contract was proved, but only an individual undertaking on the part of Schreyer, is not a matter of which Schreyer ought to be allowed to avail himself. It was a matter of defense for Holt, but he made no complaint, having suffered judgment to go against him by default. The lien law requires that the notice of lien filed shall state the amount claimed, and *from whom* (Laws of 1863, p. 862, ch. 500, § 6). This is essential to distinguish the claim of a subcontractor, who has simply a lien upon the building to the extent of the amount which may be due from the owner to the contractor, and the claim of the contractor directly against the owner; who has not only a lien upon the building, but the right also to a personal judgment against the owner. This distinction is apparent in the present notice. It is not the claim of a subcontractor, but of a contractor with the owner. The amount is claimed from Schreyer as owner; and it does not, in my judgment, invalidate the notice that the amount is claimed also from Holt, the contractor. It is sufficient, for the purposes of the statute, that it is claimed from Schreyer; and that the

joint responsibility of another is coupled with him in the notice, is, in my judgment, immaterial. A substantial compliance with the statute is all that is requisite in the notice creating the lien (*Beals* v. *The Congregation B'nai Jeshurun,* 1 E. D. Smith, 654); and where it appears by the notice that it is a claim for a certain amount against the owner, upon a contract made with him, that is, I think, sufficient to create a lien upon the building by the filing of the notice, to the extent of the claim made against the owner, and everything else in the notice may be rejected as surplusage. *The chief object of the notice is to apprise the owner that his property is sought to be charged,* and to protect others, such as purchasers, or mortgagees, by apprising them of the *alleged* claim (*Beals* v. *Congregation, &c. supra*). And this was substantially complied with in the present case, so far as respects the imposition of a lien upon the building, to the extent of the amount claimed against Schreyer. It did not and could not create any lien upon the building by virtue of a claim also against Holt, for he was not the owner, and it did not purport to be a claim upon funds in the hands of the owner to which the claimant was equitably entitled by statute, under a contract made by him with Holt, for materials which were in conformity with the terms of a contract made by Holt with the owner. This portion of the notice, therefore, may be rejected without affecting the sufficiency of it as a notice of a claim against Schreyer. The whole course of legislation in respect to liens of this meritorious character has been to facilitate, as far as possible, the means by which the mechanic or material-man may secure himself, by filing notice of his lien; and the court, if it is at all possible to do so, should give full effect to such a notice, declaring it invalid only where there is a plain and absolute want of one of the requirements which the statute has made essential to the creation of the lien.

The materials were furnished between the 25th of May and the 22d of December, 1870; the notice of lien was filed on the 23d December following, the day after the delivery of the last item; and the objection is taken that the lien, by the express terms of the statute, attaches only to so much of the materials

as were furnished three months previous to the filing of the notice, which would reduce Hubbell's lien to about $174.

It was held by the Court of Appeals, in *Spencer* v. *Barnett*, 35 N. Y. Rep. 94, that under the Kings county act, the lien did not attach to materials furnished more than sixty days before the filing of the notice, although furnished under the *same contract* as the materials which were delivered within the sixty days.

There was a difference between the Kings county act, under which decision was made, and the act applicable to this county; as, under the former act, the material-man had double the time given to him for the filing of his lien, that was given to the mechanic, which has not been the case in any of the acts applicable to this city, nor is it now under the present Kings county act; this distinction in Kings county between the mechanic and the material-man having been repealed in 1862 (Laws of 1862, p. 949, § 3). My colleague, Judge Robinson, before whom and myself the argument upon this appeal was heard, is of opinion that this distinction between the provisions in the two acts can make no difference in the application of the decision of the Court of Appeals; that that decision, as a construction of the lien law, is as applicable to the law enacted for this county as it was to the Kings county act; and I confess that I am not prepared to hold that the difference between the two acts is such as to warrant us in saying that that decision is to be limited to the Kings county act as it existed prior to 1862, and does not apply to the law as enacted for this county; and, *but for this decision*, I should certainly have taken the same view as Judge Nott, in his Treatise, page 89—that the lien law did not contemplate the amount claimed being from time to time split up by separate liens, nor a repetition of a lien for parts of the same thing; and in the case of an *entire contract*, that the three months begins to run from the completion of the work, or the delivery of the last item of the materials contracted for.

Assuming, as I think we must do, that the decision of the Court of Appeals is to be received and followed as an interpretation of our own act, then the finding of the referee, that

Hubbell was entitled to a lien for his whole claim upon the building was erroneous, and the report must be modified so as to limit the lien to the items delivered after the 23d of September, 1870, my conclusion being that the notice was properly filed, and that the materials were furnished upon a contract made by Hubbell with Schreyer.

I now pass to the claim of Muldoon. He filed the notice of his lien on the 12th of January, 1871. It set forth two claims ; one against Holt for $1,349, and one against Schreyer for $883. They were both for brown stone furnished for, cut, and set in the building.

The stone in the claim against Holt was alleged to have been furnished, cut and set in pursuance of a contract between Holt and Schreyer—that is, it was a claim as subcontractor,— and the other was a claim for extra work and materials upon a contract made by Muldoon with Schreyer, for which Schreyer would be personally liable.

The lien, so far as respects the first claim of $1,349, is objected to on the ground that Holt's contract was made with Muldoon, Kenney and Doonan, and in the notice filed the claim is stated to be simply the claim of Muldoon. The act of 1863 prescribes that the notice shall state *to whom* the amount claimed is due, and when the notice of lien was filed, the amount was due, not to Muldoon individually, but to the three partners, Muldoon, Kenney and Doonan.

This being an express statutory provision, it cannot be dispensed with. The lien is created by the filing of the notice, and everything which the statute requires to be stated in it is an essential prerequisite to the creation of the lien, and if anything required by the statute is omitted, nothing is accomplished by the filing of the notice (*Beals* v. *Congregation B'nai Jeshurun*, 1 E. D. Smith, 654; Nott's Treatise on Mechanic's Lien Laws, pp. 10, 11, 13).

If the claim is due to three persons jointly, the notice should state that the amount claimed is due to them, and stating that it is due to one of them only is not a compliance with the statute. If that were permitted, each of them might file a separate notice in the same way, and the anomaly would be presented

of three separate liens for the same claim. The parties who made the contract to perform the work and labor, or to furnish the materials, must be stated, because the filing of the notice is the foundation of a proceeding in which a personal judgment may be rendered against the party who ordered or contracted for the work or for the materials, and it is his right that any decision or judgment that may be rendered in his favor upon the contract, should be conclusive upon the parties to it; which would not be the case if the notice is filed, and the proceedings under it are instituted on behalf only of one of the joint contractors. In this case, the contract of Holt with Muldoon, Kenney and Doonan, to furnish and put up the brown stone, was in writing, so as to leave no question as to the fact; whilst in the notice filed, the agreement is set forth as made with Francis Muldoon, and the notice is to the effect that he has, and claims a lien upon the building. The only construction that can be put upon such a notice, is, that he *alone* made the agreement with Holt, and that he individually had a right to claim a lien for the performance of the agreement. The lien under the statute is a personal right given to those who do the work or furnish the materials (*Rollin* v. *Cross*, 45 N. Y. 771); *and where there are several, no one has the right to create the lien exclusively for himself.* It is given by the statute to any person or *persons* who shall, as *contractor, laborer, workman, merchant,* or *trader,* perform any labor or furnish any materials (Laws of 1863, p. 861, § 1); and when the statute declares that the notice shall state to whom the amount claimed is due, it plainly means, if there be more than one, the "persons" to whom it is due, and to whom, by the first section above quoted, the right to a lien is given.

At the hearing before the referee, an assignment in writing of the claim by Doonan and Kenney to Muldoon, was given in evidence by Muldoon. The instrument was dated the 16th of September, 1870, which would be more than three months before Muldoon filed his notice, the notice having been filed on the 12th of January, 1871. The lien being a personal right, the right to create it cannot be transferred or assigned to another (*Rollin* v. *Cross*, 45 N. Y. R. 771; *Daubigney* v. *Du-*

*val*, 5 Tenn. 604; *Caldwell* v. *Launnier*, 10 Wis. 332; *Parsons* v. *Tincker*, 36 Me. 384). It may be that an assignment like this, in which two of three joint contractors relinquish and give up to the co-contractor all their joint interest in the claim, would entitle him to acquire a lien, by filing his notice in the manner in which Muldoon did. But that question cannot arise in this case, for it is proved by the evidence of Muldoon himself, that although the assignment bears date the 16th of September, 1870, it was not executed, in fact, until after the notice was filed, and after the proceedings were instituted to foreclose, that is, some time in the early part of the year 1871. He was examined as a witness on the 17th of August, 1871, before the referee, and testified that the assignment had been executed about a month before the day of his examination. He also testified that his partners ran away on the 15th of September, 1870, and the date of the instrument is the 16th, the day afterwards; so that at the time when Muldoon filed his notice, Doonan and Kenney were jointly interested in the claim, which was *due to the three, and not, as appeared by the notice, to him alone.* Doonan and Kenney, as he testified, ran away with the money, and, under the circumstances, he probably erroneously regarded himself as exclusively entitled to the claim.

The assignment after the filing of the notice, and the institution of proceedings to foreclose the lien, could not cure the defect in the notice. If the statute had not provided that the notice should state to whom the amount was due (as in the act of 1851, which had no such provision), we might get over the difficulty by leaving the owner or contractor to plead or set up the non-joinder in the action brought to foreclose the lien. But the act of 1863 has made this statement in the notice essential, and no lien can be created where anything is omitted, which the statute has expressly required.

When the evidence on the part of Muldoon was closed, a motion was made to dismiss his claim, on the ground that the work was done by the firm; that no assignment of the claim to him by his copartners was made prior to the filing of the

notice to create the lien, and that the notice should have been filed by, or on behalf of the *firm*.

The objection having been taken, it was error on the part of the referee to disregard it. This applied to the claim stated in the notice to be against Holt, $1,349, for which, the referee held, a good and valid lien was created by the filing of the notice.

Though the notice of lien distinguished between the claim which Muldoon stated in the notice he had as a subcontractor against Holt, $1,349, and the claim he had separately against Schreyer, $883, the referee made no such distinction ; but putting both claims together, which amounted to the sum of $2,232, he found that the whole sum was due from Schreyer to Muldoon, with interest, and reported that Muldoon was entitled to judgment against Schreyer for that amount, with costs.

Judge Nott, in his carefully considered treatise, was of the opinion that under the acts of 1851 and 1855 distinct claims against the owner and the contractor could not be joined in the same lien ; that the statutes then existing did not contemplate and would not warrant such a course. The act of 1863 is in this respect, however, more comprehensive, and as it gives the court the power to determine the rights and equities of all parties, and the amounts due to each, I see no objection to including a claim against the owner and a claim against the contractor in the same notice, where, as in this case, each claim is separately distinguished ; for the court may enforce one as a lien upon the building to the *extent* of the *payments* due by the owner to the contractor, and as respects the other, not only enforce it as a lien upon the building, but render a personal judgment against the owner for the amount of it.

The first section gives a lien to the person designated, for labor performed or materials furnished in pursuance of the terms of a contract with or employment by the owner, or in conformity with the terms of such a contract (which embraces the case of a subcontractor) "*or by or in accordance with the direction of the owner or his agent.*" This is very comprehensive and includes a subcontractor's contract, if in conformity with the contract for the building, made with the

owner, and also a contract made directly with the owner ; and I see no objection to including both in the notice if they are separately distinguished. But a claim stated in the notice to be against the contractor, must in the foreclosure of the lien be shown to be a claim of that description, and it will not suffice to show that it is a claim founded upon a contract made with the owner, because the statute requires that the notice by which the lien is to be created must state *by whom* the amount claimed is due, and the notice having stated it to be due by the contractor, when in fact it was due by the owner, *the notice is shown to have been defective, inasmuch as a material and essential statement in it turns out to be untrue.*

The referee, therefore, erred upon two grounds : 1st, by holding that upon a claim stated in the notice to be against the contractor, a personal judgment could be rendered against the owner; and 2d, that Muldoon acquired a valid lien upon a claim due to him jointly with two others by filing a notice stating that the claim was due to him.

Independent of this joint contract, Muldoon claimed to recover $967 for extra work, upon which claim the referee allowed him the amount stated in his notice, $883. It did not appear that Doonan or Kenney had anything to do with this extra work, or that any contract, express or implied, was made for it with Holt. It would seem that after Muldoon's partners left, Muldoon finished the work, and that he received a *plan* from Schreyer out of which this extra work arose, the new plan being different from the previous one. When this plan was presented by Schreyer to Muldoon, he objected to it without being paid extra for work done according to it. Schreyer insisted that he should do it, as that was to be the finish when the building was completed, and after some discussion, Schreyer said he was willing to and would pay for anything extra on the building; upon which Muldoon replied that he would go on with it, and he finished the work according to the new plan. This conversation with Schreyer occurred before Muldoon commenced on the new plan, or did any of the extra work, which extra work he charged upon his books to Schreyer.

It was, under these circumstances, clearly a contract between Muldoon and Schreyer, and the referee was right in holding that Schreyer was individually responsible for the payment of this $883.

The evidence warranted a decree for the enforcement of a lien upon the building for the materials which had been furnished by Hubbell *three months prior to the filing of his lien*. As the lien never attached to the materials which were furnished before that time, I do not think a personal judgment could be rendered in this action for the enforcement of a lien for the materials anteriorly furnished. If they had been furnished under the same contract as the materials subsequently supplied, and to which the lien attached, there might be some ground for arguing that, having acquired jurisdiction in respect to the *contract* by the action to foreclose, a lien was acquired under the contract, but not for all the materials furnished under it; we might give the relief which the statute contemplates, in the rendition of a personal judgment, under the familiar rule that where a court of equity has gained jurisdiction of a cause for one purpose, the court may determine the whole matter in controversy, to prevent further needless litigation or multiplicity of suits, *if it can give the further relief without the assistance of a jury* (*Armstrong* v. *Gilchrist*, 2 Johns. Cas. 430, 431; *Rathbone* v. *Warren*, 10 Johns. 596; *King* v. *Baldwin*, 17 Id. 386; *Russell* v. *Clark*, 7 Cranch, 89; *Parker* v. *Dee*, 2 Ch. C. 200, 201; Story's Eq. Jur. § 72).

But Judge Robinson has pointed out that the order given by Schreyer to Hubbell for the furnishing of materials, had not the characteristics of an *entire contract*, each item, in his opinion, constituting an independent contract, as to which the statute of limitations would run from the day of the delivery of the items, and under that view, I do not think that we have jurisdiction, under the act of 1863, to render a personal judgment upon contracts performed three months before the notice of lien was filed, and which, consequently, it did not embrace. The evidence warranted a judgment against Schreyer for the extra work done by Muldoon. The report will therefore have to be reversed as to Hubbell, except for the materials furnished

within the three months, and affirmed as to the extent of these materials.

The referee's finding upon Muldoon's claim will have to be reversed, unless Muldoon consents to reduce the judgment entered in his favor to $883, and interest, in which event it will be affirmed for that amount.

There were several objections taken by Schreyer to the admission and exclusion of evidence. These exceptions, or very many of them, would scarcely be available in an action at law, and in an equitable proceeding or action, errors of this description are not regarded, if, taking the whole evidence together, the court is satisfied that no injustice has been done by the errors complained of (*Clark* v. *Brooks*, 2 Daly, 164, 165); and such, we are satisfied, is the case here.

ROBINSON, J.—I concur fully in all the conclusions to which the Chief Justice has arrived in his opinion, and without entertaining doubt on the question suggested by him, that the lien of the plaintiff Hubbell is limited to the items of his account supplied within three months prior to the filing of his notice of lien (Dec. 23, 1870), amounting to $173 47. The subsisting mechanics' lien law, applicable to this city (Laws of 1863, chap. 500), by its 6th section, only authorized the filing of a notice and creation of a lien "within three months after the work is done, or materials furnished." Had all the materials of Hubbell's claim been furnished under an *entire contract*, for certain materials, or all such as were required by their plans and specifications for the erection of the building, it would probably have *deferred* the plaintiff's compensation therefor, until his contract was completed, and have attached the right of lien to articles that he had supplied on such contract, more than three months prior to the filing of the notice of lien; but I find nothing in the evidence warranting the conclusion that Hubbell furnished the materials for which his claim is made, upon an account running for seven months, upon any such *entire agreement.* Prior to May 23d, he had been selling materials to Holt, the contractor, and being dissatisfied by reason of the difficulty in obtaining payment, re-

fused to sell him any more, and so stated to Schreyer, the owner, who thereupon, as the testimony warrants, and as was the finding of the referee, agreed with plaintiff " to pay for such material as should *thereafter* be furnished by plaintiff in and about the erection of the buildings." There is no suggestion, however, in the testimony, of any agreement, express or implied, between plaintiff and the defendant Schreyer, that the former should furnish any specific kind, quality, or quantity of building materials, or at any specific prices, or on any credit which prevented Hubbell from demanding immediate payment for the materials he furnished, or which prevented either party from declining to deal with the other in reference to the matter. It was but the opening of a running account which either might discontinue at pleasure, and possessed none of the characteristics of an *entire account* for all materials necessary to the completion of the building, according to the plans and specifications. In the absence of any agreement of this precise character, each item of the account constituted the subject of an independent contract, against which the statute of limitations would run from the day of delivery of each article ordered and delivered (Ang. on Lim. § 148). The rule of law against the splitting up of demands, growing out of matters of account accruing from time to time on credits as applied for, into separate suits, is one to prevent the oppression of the debtor by his being subject to a needless multiplicity of suits (*Guernsey* v. *Carver*, 8 Wend. 492 ; *Colvin* v. *Corwin*, 15 Id. 557, as explained in *Secor* v. *Sturgis*, 16 N. Y. 548). It in no way segregates the items into an entire cause of action so as to debar the operation of the statute of limitations against the earlier items against which the prescription ran.

The mechanic's lien law, being in derogation of common-law rights, must be *strictly construed, as to all essentials necessary to the creation of the lien.* The operation of the 6th section, allowing the filing of the lien " within three months after the work is done or the materials furnished," is not, as in ordinary statutes of limitation, the imposition of forfeiture of the remedy or right of recovery, by cutting up the items of account, against which the prescription runs (*Kimball* v. *Brown*, 7 Wend.

322; *Palmer* v. *The Mayor, &c. of N. Y.* 2 Sandf. 322, and cases cited), but is permissive, and affords a right through compliance with a condition precedent by which the lien may be acquired. While regarding the provision as only affording the remedy for work done or materials furnished within three months prior to the filing of the notice of lien, I can perceive no difficulty in the workman or material-man, whose claim rests in a current account filing successive notices of lien, as each successive period of three months is about elapsing, for the claims that have accrued during those times. Even this would be in no respect a splitting up of a claim on a current account, nor obnoxious to any recognized principle condemning such a proceeding, but would be merely insuring the collateral security for the current credits (as the act assumes to provide in § 3), by successive liens afforded either to contractor, subcontractor, workman, or material-man (according to their respective rights), or to either, for current or separate claims; the *liens* as to which may be successive, and become the subject of adjustment in the action contemplated by the act for foreclosure and adjudication as to the rights of all the parties.

While such a construction requires a prompt assertion of claim by way of lien, it also protects the owner and others interested in the property from stale claims and latent liens. Besides, the decision of the Court of Appeals in *Spencer* v. *Barnett*, 35 N. Y. 94, in my opinion is controlling upon the point. Except in the difference of time fixed by the Kings county act, then under review, requiring the notice of lien to be filed within *sixty* days after the materials are furnished, I can discover nothing in principle to distinguish from this.

The limitation of Hubbell's lien to articles furnished, as per his account, within three months of the filing of his notice of lien, to wit, after September 23d, 1870, is upon principle and authority.

Judgment as to Muldoon reversed, unless he consent to reduce it to $883 and interest.

Judgment as to Hubbell reduced to $173 47 and interest.